Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued March 17, 2004        Decided August 31, 2004

No. 03-7021

IN RE: SEALED CASE (MEDICAL RECORDS)

————

Consolidated with
03–7066

————

Appeals from the United States District Court
for the District of Columbia
(No. 02cv00401)

————

*Lois R. Goodman* argued the cause and filed the briefs for appellant.

*Harvey S. Williams*, *pro hac vice*, argued the cause for appellees. With him on the brief was *Patrick A. Malone*.

Before: SENTELLE, TATEL, and GARLAND, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* GARLAND.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

GARLAND, *Circuit Judge*: The appellant, an adult male who is a committed ward of the District of Columbia Mental Retardation and Developmental Disabilities Administration (MRDDA), appeals from a district court order requiring MRDDA to produce all of his records to counsel for plaintiffs who are suing MRDDA and the District. We conclude that the court abused its discretion by ordering production of the records without determining whether any are subject to the federal psychotherapist privilege recognized in *Jaffee v. Redmond*, 518 U.S. 1 (1996), and without weighing the probative value of the non-privileged records against the extent of the intrusion into the appellant's legitimate privacy interests. We therefore vacate the order and remand for further proceedings.

I

The plaintiffs in the district court — the appellees here — are "two mentally retarded adult men" who are "wards of the District of Columbia government" and for whose care and well-being MRDDA is responsible. Compl. ¶¶ 1, 9. For several years during the 1990s they lived in a residential group home at 2303 Minnesota Avenue, S.E. The appellant here also is a "mentally retarded adult" man and "committed ward" of the District. Appellant's Br. at 1. He lived in the same group home beginning in mid–1997.

According to the complaint, the appellant sexually assaulted the plaintiffs at the group home. Compl. ¶¶ 12, 15. The complaint further alleges that, although the resident director of the facility notified District officials of those assaults, the District did nothing to protect the plaintiffs until it moved the appellant to another facility on August 31, 1998. The plaintiffs seek damages from the District under 42 U.S.C. § 1983 for violating their civil rights, and under various District of Columbia causes of action, including negligence.[1] The complaint asserts that the district court has federal question

---

[1] The plaintiffs have joined as defendants the corporation and individuals who owned and operated the group home, as well as the MRDDA case worker assigned to the plaintiffs.

jurisdiction over the § 1983 claim, *see* Compl. ¶ 2 (citing 28 U.S.C. § 1331), and supplemental jurisdiction over the local law claims, *id.* (citing 28 U.S.C. § 1367(a)).

During pre-trial proceedings, the plaintiffs moved to compel production of the District of Columbia's "complete files" on the appellant. The District took no position on whether the files should be produced, either at that time or subsequently. On October 11, 2002, the district court granted the motion, directing that "the files of [appellant] shall be produced for inspection by the plaintiffs' counsel," and requiring that they be "treated as confidential" and used "only . . . in connection with this litigation." Order, No. 02–401 (D.D.C. Oct. 11, 2002) (hereinafter October 2002 Order).

Thereafter, the appellant's guardian ad litem, appointed by the Superior Court of the District of Columbia, entered a special appearance to represent the appellant in connection with the requests for his "medical and ward files." Objecting to the breadth of the district court's discovery order, and contending that the documents were subject to a number of privileges, the guardian filed a motion for reconsideration and for a more extensive protective order pursuant to Federal Rule of Civil Procedure 26(c). Unconsented Mot. for Ct. to Reconsider at 1. On February 14, 2003, the district court denied the motion to reconsider and ordered that "defendant District of Columbia shall produce the relevant medical records of [appellant] to plaintiffs' counsel in accordance with the prior Order of this Court. . . ." Order, No. 02–401 (D.D.C. Feb. 14, 2003) (hereinafter February 2003 Order).

The plaintiffs then asked the court for clarification, contending that the District should produce the appellant's "entire file," regardless of whether the records were "relevant" or "medical." 5/15/03 Tr. at 3, 4, 12. At a hearing conducted on May 15, 2003, the plaintiffs insisted that they were "entitled to receive any documents that might reasonably lead to the discovery of admissible evidence," and that they did not "want someone else saying, Well, we don't think this is relevant when we might in fact think it is relevant." *Id.* at 12. The appellant's guardian objected on the ground that

some of the documents were privileged and confidential, and that the court had not weighed the plaintiffs' interest in the documents against the appellant's privacy interest. *Id.* at 5–11. The court nonetheless granted the plaintiffs' request and directed that their counsel be allowed "to review the entire file and to tab those records that he believes will serve his evidentiary purposes in connection with this case." *Id.* at 15. The court further instructed plaintiffs' counsel to prepare a written order, which the court entered on August 7, 2003. The order stated:

> [T]he mental retardation records of [appellant], including medical records and case notes, in the possession of defendant District of Columbia [shall] be made available to counsel for plaintiffs for review. Counsel for plaintiffs shall designate which records are to be produced in connection with this case . . . .

Order at 1–2, No. 02–401 (D.D.C. Aug. 7, 2003) (hereinafter August 2003 Order).

The appellant, through his guardian ad litem, appealed the August 2003 Order requiring production of his MRDDA files.[2] On October 28, 2003, another panel of this court granted a stay of production pending appeal. We now consider the issues raised by the appellant.

## II

We begin with a question of appellate jurisdiction. Plaintiffs-appellees contend that we lack jurisdiction because the district court's order was merely an interlocutory discovery order, rather than a final order subject to our review pursuant to 28 U.S.C. § 1291. Ordinarily, a decision is not considered final under § 1291 unless it "ends the litigation on the

---

[2] The appellant also seeks review of the district court's February 2003 Order, and further contends that the lower court still considers the October 2002 Order to be "live" as well. Appellant's Br. at 21–22. Because both sides agree that the August 2003 Order supersedes the prior orders, we vacate those prior orders as moot. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950).

merits and leaves nothing for the court to do but execute the judgment." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (internal quotation marks omitted). Under the collateral order (*Cohen*) doctrine, however, an order qualifies as "final" under § 1291 if it: "(1) conclusively determine[s] the disputed question, (2) resolve[s] an important issue completely separate from the merits of the action, and (3) [is] effectively unreviewable on appeal from a final judgment." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (internal quotation marks omitted); *see Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

The application of the collateral order doctrine to the discovery order at issue here is controlled by our recent decisions in *United States v. Philip Morris Inc.*, 314 F.3d 612 (D.C. Cir. 2003), and *In re England*, 375 F.3d 1169 (D.C. Cir. 2004). In those cases, we concluded that orders compelling production of allegedly privileged information satisfied the three criteria for collateral review. *See Philip Morris*, 314 F.3d at 615–16 (attorney-client privilege); *England*, 375 F.3d at 1175–76 (statutory non-disclosure provision covering Navy selection board proceedings); *see also Pearson v. Miller*, 211 F.3d 57, 64 (3d Cir. 2000) (holding that the collateral order doctrine permitted appeal from an order compelling the production of records relating to the "violent sexual proclivities" of an individual, where the individual contended the records were protected by state and federal privileges). The same analysis applies to the order in this case, which overrode the appellant's claims of a number of privileges.

First, by compelling production notwithstanding the appellant's claims of privilege, the order "conclusively and finally determined" that the documents were not protected from disclosure to plaintiffs' counsel by any privilege. *Philip Morris*, 314 F.3d at 617. As in *Philip Morris*, "[i]n no way does the record suggest that the district court's conclusion is tentative or subject to revision." *Id.* The plaintiffs dispute the conclusiveness of the district court's order on the ground that it requires disclosure only to counsel; disclosure for use at trial requires a further decision by the court. But the

order is final with respect to that initial disclosure, and if the documents are privileged — a point we must accept as true for purposes of deciding this jurisdictional question — an involuntary disclosure to the plaintiffs' counsel breaches the privilege. Although the appellant may suffer additional injury if additional disclosure is later permitted, that does not diminish the original injury or make the court's authorization of it any less final.

Second, the issue is both completely separate from the merits and important. Just as was the case for the attorney-client privilege in *Philip Morris*, "the privilege question" here "is separable from the merits of the underlying case." *Id.; see England*, 375 F.3d at 1175. And like the attorney-client privilege, the privileges at issue here are " 'important' in *Cohen's* sense," in that they are "weightier than the societal interests advanced by the ordinary operation of final judgment principles." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 879 (1994). As we discuss below, the appellant's privilege claims fall into two categories: the federal psychotherapist privilege and D.C. statutory medical-records privileges. The Supreme Court has determined that the psychotherapist privilege is important enough to rank with the attorney-client privilege as one of only a handful of privileges cognizable under Federal Rule of Evidence 501. *Jaffee*, 518 U.S. at 9–10. "Like the spousal and attorney-client privileges," the Court said, "the psychotherapist-patient privilege is rooted in the imperative need for confidence and trust," and "promotes sufficiently important interests to outweigh the need for probative evidence." *Id.* at 9–10 (internal quotation marks omitted). The District of Columbia has similarly indicated the importance it attaches to the other (perhaps overlapping) privileges claimed by the appellant by specifically according them statutory protection. *Cf. England*, 375 F.3d at 1176 (noting that a federal statutory non-disclosure provision was an indication of the "importance" of a protected interest for purposes of the *Cohen* doctrine); *Pearson*, 211 F.3d at 64 (concluding that a claim that state statutory confidentiality provisions should be recognized as federal evidentiary privileges was important for purposes of *Cohen*).

Third, the order will be effectively unreviewable on appeal from a final judgment. The district court has ordered the District of Columbia to turn over the appellant's records to plaintiffs' counsel. The District has indicated that, absent our intervention, it will follow that order. *See* Am. Notice of Defs. Regarding Production of Records at 1. At that point, "the entirety of the [records] will have been disclosed to third parties, making the issue of privilege effectively moot." *Philip Morris*, 314 F.3d at 619. As our prior cases have repeatedly noted, "appeal after final judgment is obviously not adequate in [privilege] cases — the cat is out of the bag." *England*, 375 F.3d at 1176 (quoting *In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998)); *see Philip Morris*, 314 F.3d at 619 (same).

We therefore conclude that the criteria for invocation of the collateral order doctrine are satisfied, and that we properly have jurisdiction over appellant's appeal. We note that appellate jurisdiction is also supported here by the rationale of the *Perlman* doctrine, which holds that "a discovery order directed at a disinterested third party is treated as an immediately appealable final order because the third party presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance." *Church of Scientology v. United States*, 506 U.S. 9, 18 n.11 (1992) (citing *Perlman v. United States*, 247 U.S. 7, 13 (1918)). Although the document custodian in this case, the District of Columbia, is not a "disinterested third party," we have applied *Perlman* when one party seeks documents in the hands of another and a nonparty claims to possess a privilege in the documents. *See United States v. AT&T*, 642 F.2d 1285, 1296 (D.C. Cir. 1980) (holding that an appeal should be permitted because the nonparty appellant "was not the object of the document demand and could therefore not possibly refuse disclosure and undergo a contempt citation as a means to appeal").[3] Moreover, whatever the District's degree of interest in the disposition of the documents, it has raised no objection to

3 *See also In re Sealed Case*, 141 F.3d 337, 340 (D.C. Cir. 1998) (noting that *Perlman* "reflected concern that where the subject of

producing them and, to the contrary, has unequivocally stated its intention to do so upon court order. *See In re Sealed Case*, 146 F.3d 881, 883 (D.C. Cir. 1998) (holding that "[t]he *Perlman* doctrine applies here because the [custodian] swore . . . an intention to produce the documents rather than submit to a contempt citation").[4]

## III

In this Part, we consider the appellant's claims of privilege regarding the documents subject to the district court's discov-

---

the discovery order (characteristically the custodian of the documents) and the holder of a privilege are different, the custodian might yield up the documents rather than face the hazards of contempt, and would thereby destroy the privilege"); *In re Grand Jury Investigation of Ocean Transp.*, 604 F.2d 672, 673 (D.C. Cir. 1979); 15B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3914.23, at 156 (2d ed. 1992) (hereinafter WRIGHT & MILLER) (noting that the *Perlman* doctrine "allows appeal by a person who cannot control the decision whether to act in contempt").

[4] The plaintiffs note in their "Statement of the Case" that they objected in the district court to the appellant's standing to oppose production of his records, on the ground that he was not named as a party defendant and had not moved to intervene. Appellees' Br. at 3. They do not, however, raise such a standing objection on this appeal. There certainly is no question regarding the appellant's constitutional standing, as his privacy interest in the records creates the necessary case or controversy. *Cf. Devlin v. Scardelletti*, 536 U.S. 1, 6–7 (2002). The Supreme Court has "never . . . restricted the right to appeal to named parties to [a] litigation," *id.* at 7, and "if the decree affects [a third party's] interests, he is often allowed to appeal." *Castillo v. Cameron County*, 238 F.3d 339, 349 (5th Cir. 2001) (internal quotation marks omitted). "Thus, a non-party may appeal orders for discovery if he has no other effective means of obtaining review." *Id.* Moreover, courts of appeals have construed a district court's decision to permit a non-party to participate in a discovery dispute as the equivalent of authorizing intervention. *See Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 784 (1st Cir. 1988); *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 294–95

ery order. We review a district court's discovery rulings for abuse of discretion. *Macharia v. United States*, 334 F.3d 61, 64 (D.C. Cir. 2003); *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997). Because a "district court by definition abuses its discretion when it makes an error of law," the "abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Koon v. United States*, 518 U.S. 81, 100 (1996).

In subpart A, we consider whether federal or state privilege law applies to the district court's discovery order.[5] In subpart B, we examine the federal psychotherapist privilege. In subpart C, we address the appropriate disposition for those documents that, although outside the scope of the federal privilege, implicate the privacy concerns reflected in District of Columbia statutory privileges.

## A

Rule 501 of the Federal Rules of Evidence states:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or

---

(2d Cir. 1979); *In re Beef Indus. Antitrust Litig.*, 589 F.2d 786, 789 (5th Cir. 1979).

[5] For purposes of pendent (supplemental) jurisdiction analysis, we treat the District of Columbia as if it were a state. *See, e.g.*, *Dimond v. District of Columbia*, 792 F.2d 179, 188 & n.6 (D.C. Cir. 1986); *see also Hall v. Ford*, 856 F.2d 255, 267 (D.C. Cir. 1988) ("In considering this pendent claim, we are of course bound by the law of the District of Columbia, as authoritatively interpreted by the D.C. Court of Appeals.").

defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

FED. R. EVID. 501.[6] It is thus clear that when a plaintiff asserts federal claims, federal privilege law governs, but when he asserts state claims, state privilege law applies. What is unclear is the proper resolution in a case like this, where the plaintiffs assert both federal and state claims, and relevant evidence may be privileged under one but not the other. *See Jaffee*, 518 U.S. at 17 n.15 (noting the problem but finding its resolution unnecessary to decide that case); 23 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5434, at 861–64 (2d ed. 1980 & Supp. 2004) (hereinafter WRIGHT & GRAHAM) (noting uncertain legislative history and suggesting various methods of resolution).

"The usual solution by the courts" in such cases "has been a preference for federal privilege law when it conflicts with state privilege law." 3 JOSEPH M. MCLAUGHLIN ET AL., WEINSTEIN'S FEDERAL EVIDENCE § 501.02[2][c], at 501–14 (2d ed. 2004) (hereinafter WEINSTEIN'S) (collecting cases).[7] There is

---

[6] *See also* FED. R. EVID. 1101(c) (providing that the "rule with respect to privileges applies at all stages of all actions, cases, and proceedings"); 8 WRIGHT & MILLER § 2016, at 221 (noting that the usual view is that "the same rules of privilege apply to discovery as apply at the trial").

[7] *See Virmani v. Novant Health Incorp.*, 259 F.3d 284, 287 n.3 (4th Cir. 2001) ("We agree with our sister circuits that in a case involving both federal and [pendent] state law claims, the federal law of privilege applies."); *Pearson*, 211 F.3d at 66 (finding that Rule 501 directs the courts to apply federal privilege law where the material is relevant to both federal and state claims); *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992) (holding that "the existence of pendent state law claims does not relieve us of our obligation to apply the federal law of privilege"); *Hancock v. Hobbs*, 967 F.2d 462, 466 (11th Cir. 1992) (noting that "when the federal and state laws of privilege are in conflict," courts "have uniformly held that the federal law of privilege governs even where the

much to be said for this approach. Where a document is relevant to both federal and state claims but the federal and state privilege rules are inconsistent, the application of an inconsistent state rule in either direction could undermine the federal evidentiary interest — either by barring disclosure of a document that federal law permits a party to see, or by requiring the disclosure of a document that federal law protects from prying eyes. At least with respect to discovery, "it would be meaningless to hold the communication privileged for one set of claims and not for the other." *Memorial Hosp.*, 664 F.2d at 1061 n.3.[8] And where the primary source of the court's jurisdiction is the federal claim, to which the state claim is merely pendent (supplemental), it seems appropriate that the federal evidentiary interest — whether in privilege or production — should be primary as well.

Unfortunately, neither the district court nor the parties have addressed this question, and we hesitate to decide it conclusively (and for the first time in this circuit) without the benefit of briefing. Fortunately, it does not appear that we have to do so to resolve this appeal. As we discuss below, the

---

evidence sought [in discovery] might be relevant to a pendent state claim"); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.10 (9th Cir. 1992) (holding that federal privilege law applies in a case involving both federal and pendent state claims); *von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987) (declaring that, where the evidence sought "is relevant to both the federal and [pendent] state claims," courts "consistently have held that the asserted privileges are governed by the principles of federal law"); *Memorial Hosp. v. Shadur*, 664 F.2d 1058, 1061 n.3 (7th Cir. 1981) (concluding that the fact that a complaint asserts a pendent state claim does not change the applicability of federal privilege law). *But see Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995) (looking to state privilege law for state cause of action in a case with both federal and state claims).

[8] *See* 23 WRIGHT & GRAHAM § 5434, at 862 n.20 (contemplating a rule in which, although evidence is discoverable despite a claim of state privilege, a court "might still rule that the evidence was inadmissible on the state claim at the time of trial").

federal psychotherapist privilege requires the withholding of some documents (if they exist) as absolutely privileged, and the D.C. statutes appear to be at least as protective. *See infra* note 9. Whether or not additional documents are subject to privilege under state law, Federal Rule of Civil Procedure 26 at least requires the district court to weigh the appellant's privacy interest in those documents against the plaintiffs' need for them before it orders production. Because the court did not undertake such a weighing, a remand is required in any event. Until that weighing is complete and the court decides which (if any) documents still must be produced over the appellant's objection, we need decide neither whether a state privilege would cover such hypothetical documents, nor (if it would) whether state privilege law is applicable to the plaintiffs' claims.

B

In *Jaffee v. Redmond*, the Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure" — including from compelled production pursuant to pretrial discovery — under Rule 501. 518 U.S. at 15; *see id.* at 6. The Court also extended this federal psychotherapist privilege "to confidential communications made to licensed social workers in the course of psychotherapy." *Id.* at 15. Thus, any "conversations between" the appellant and a licensed psychotherapist or social worker "and the notes taken during their counseling sessions are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Id.* at 6, 18. District of Columbia statutory provisions appear to provide a privilege at least as broad.[9]

---

[9] *See* D.C. CODE § 7–1201.02 (providing that, except in specific instances not applicable here, "no mental health professional, mental health facility, data collector or employee or agent of a mental health professional, mental health facility or data collector shall disclose or permit the disclosure of mental health information to any person, including an employer"); *id.* § 7–1201.03 (providing that the

Although the district court did not address *Jaffee* directly, it did state generally that "privileges are qualified or conditional for a number of reasons, including in the interests of justice." *See* 5/15/03 Tr. at 10. That statement is incorrect with respect to the psychotherapist privilege. In *Jaffee*, the Court flatly rejected the suggestion that the privilege was subject to balancing. 518 U.S. at 17. "Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure," the Court said, "would eviscerate the effectiveness of the privilege." *Id.* Accordingly, the district court may not permit the plaintiffs' counsel to see materials covered by this privilege, regardless of its assessment of "the interests of justice."

The appellant's guardian has represented that she has reviewed the appellant's MRDDA files, and that they do contain confidential communications to mental health workers in the course of psychotherapy. Oral Arg. Tape at 2:10–2:25. We, of course, do not know whether that is correct. But the district court and plaintiffs did not know either. Nonetheless, the court ordered disclosure of all of the appellant's records,

---

"personal notes" taken by a mental health professional regarding a client "shall not be disclosed except to the degree that [they] . . . are needed in litigation brought by the client against the mental health professional"); *see also id.* § 7–1305.12 (providing that "[a]ll information contained in a [mentally retarded] customer's records shall be considered privileged and confidential"). In addition to the provisions just cited, appellant also cites D.C. Code § 14–307, which states: "In the Federal courts in the District of Columbia and District of Columbia courts . . . [a] mental health professional . . . may not be permitted . . . to disclose any information, confidential in its nature, that he has acquired in attending a client in a professional capacity . . . ." Both this court and the D.C. Court of Appeals, however, have construed that section "as creating a mere in-court evidentiary privilege," inapplicable to the pretrial production of documents. *Doe v. Stephens*, 851 F.2d 1457, 1464 (D.C. Cir. 1988); *see Richbow v. District of Columbia*, 600 A.2d 1063, 1068 (D.C. 1991); *Vassiliades v. Garfinckel's, Brooks Bros., Miller & Rhoades, Inc.*, 492 A.2d 580, 591 (D.C. 1985).

without regard to their content and without screening them in any way. Because that order could compel the disclosure of material subject to a federal privilege, it constitutes an abuse of the district court's discretion.

### C

The federal psychotherapist privilege recognized in *Jaffee* extends no further than confidential communications between licensed mental health professionals and their patients. *Jaffee*, 518 U.S. at 15; *see id.* at 10. The appellant cites no other federal privilege, but does cite several provisions of the D.C. Code that appear to extend privacy protection to appellant's files well beyond the protection accorded by *Jaffee*. *See supra* note 9. We have been unable to find District of Columbia cases that delineate the scope of those asserted statutory privileges in any way that is relevant here.[10] But regardless of whether the statutory provisions afford privileges that would of themselves bar disclosure of documents in the appellant's file, those provisions should at least inform a district court's determination of whether to compel production of the documents under Federal Rule of Civil Procedure 26.

Rule 26(b)(1), under which the plaintiffs sought discovery of the appellant's file, provides as follows:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... For good cause, the court may order discov-

---

[10] The District of Columbia courts have denoted certain narrow exceptions that do not apply to this case. *See, e.g.*, *Jackson v. United States*, 623 A.2d 571, 583 (D.C. 1993) (stating, with respect to D.C. CODE § 6–2002 (the precursor of § 7–1201.02), that although the section restricts disclosure of mental health records to any person, an individual's interest in confidentiality "may have to yield where the right of the defense to cross-examine a witness in a criminal case must be accorded protection"); *In re O.L.*, 584 A.2d 1230, 1233 (D.C. 1990) (holding that the child-neglect proceedings provision of D.C. CODE § 2–1355 is an exception to § 6–2002).

> ery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii).*

FED. R. CIV. P. 26(b)(1) (emphasis added). The last sentence of Rule 26(b)(1) was added in 2000 "to emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery." FED. R. CIV. P. 26(b)(1) advisory committee's note (2000).[11] Subdivision (b)(2) — entitled "Limitations" — in turn provides:

> [The] extent of use of the discovery methods otherwise permitted under these rules . . . shall be limited by the court if it determines that . . . (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, . . . the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c).

FED. R. CIV. P. 26(b)(2). Finally, Rule 26(c), entitled "Protective Orders" and referred to in the last sentence of subdivision (b)(2), authorizes the court,

> for good cause shown, . . . [to] make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including one or more of the following: . . . (4) that certain matters not be inquired into, or that the

---

[11] The 2000 amendments also inserted the sentences distinguishing between discovery relevant to claims or defenses and discovery "for good cause" of matters relevant to the subject matter of the action. That change, too, was "designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery." FED. R. CIV. P. 26(b)(1) advisory committee's note (2000).

scope of the disclosure or discovery be limited to certain matters. . . .

FED. R. CIV. P. 26(c).

As a whole, "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). And "[i]t is appropriate for the court, in exercising its discretion. . ., to undertake some substantive balancing of interests. . . ." *Laxalt v. McClatchy*, 809 F.2d 885, 890 (D.C. Cir. 1987); *see United States v. Microsoft Corp.*, 165 F.3d 952, 960 (D.C. Cir. 1999) (holding that Rule 26(c)'s " 'good cause' standard . . . is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case"). In particular, "[a]lthough [Rule 26(c)] contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 n.21 (1984). Hence, in exercising their discretion under the rule, courts have long "recognized that interests in privacy may call for a measure of extra protection," even where the information sought is not privileged. FED. R. CIV. P. 26(b) advisory committee's note (1970) (referring to income tax returns, which are "generally held not privileged"); *see Pearson*, 211 F.3d at 72 (holding that "[l]egitimate interests in privacy are among the proper subjects of" Rule 26(c)'s protection).

Moreover, in determining which interests to weigh in the Rule 26 balance, courts look to statutory confidentiality provisions, even if they do not create enforceable privileges. In *Laxalt v. McClatchy*, for example, we noted that, although the Privacy Act, 5 U.S.C. § 552a, did not create a qualified discovery privilege, the fact that a document was subject to the Act was not "irrelevant to the manner in which discovery should proceed." 809 F.2d at 889. To the contrary, we held that "[w]here the actual content of the record has the potential to cause harm to the affected party, a court supervising discovery should consider this factor in determining how to

exercise its traditional authority to limit disclosure." *Id.* at 890; *see also Microsoft*, 165 F.3d at 959–60.

The Seventh Circuit made a similar point in a case raising issues close to those we face here. In *Northwestern Memorial Hospital v. Ashcroft*, a district court had quashed a subpoena for patients' medical records based on a state evidentiary privilege (which, the district court held, trumped a less stringent federal regulation pursuant to the operation of a specific federal statute). 362 F.3d 923, 924–27 (7th Cir. 2004). Relying on Rule 501, the court of appeals held that the state evidentiary privilege did not apply in a suit to enforce federal law. *Id.* at 926. Nonetheless, relying on a provision of Rule 45 (governing subpoenas) similar to Rule 26(b)(2)(iii) and (c),[12] it affirmed the district court's disposition because there was only "the possibility" that the records might have something probative in them, while their disclosure would cause "the loss of privacy by the patients," *id.* at 927. Particularly relevant here, the Seventh Circuit held that "[t]he fact that quashing the subpoena comports with Illinois' medical-records privilege" was a "factor in favor of the district court's action." *Id.* at 932. "Comity," the court said, did not require it "to apply the Illinois privilege," but did require it "to consider with special care the arguments for quashing the subpoena on the basis of relative hardship under Fed. R. Civ. P. 45(c)." *Id.* at 933.

In sum, as the Third Circuit has likewise held, even where an evidentiary "privilege is not available, a party may petition the court for a protective order that limits discovery in accordance with Rule 26(c)." *Pearson*, 211 F.3d at 65. And the "court, in its discretion, is authorized by this subsection to fashion a set of limitations that allows as much relevant material to be discovered as possible, while preventing unnecessary intrusions into the legitimate interests — including privacy and other confidentiality interests — that might be harmed by the release of the material sought." *Id.*; *see id.* at

---

[12] Rule 45(c)(3)(A) provides that the court "shall quash or modify the subpoena if it . . . (iv) subjects a person to undue burden." FED. R. CIV. P. 45(c)(3)(A)(iv).

61 (holding that, although a state mental-health-records privilege was inapplicable, the appellants had "legitimate concerns regarding the confidentiality of the information sought" that should be "addressed in the context of the District Court's power to impose reasonable limits on the discovery of information pursuant to Federal Rule of Civil Procedure 26(c)").

In this case, the district court undertook no balancing of competing interests at all. As its August 2003 Order makes clear, it required production of the appellant's entire MRDDA file — regardless of whether the material was privileged, regardless of whether it was relevant to a claim or defense, regardless even of whether it was relevant to the subject matter of the case. August 2003 Order at 1–2. At the request of plaintiffs' counsel, the preceding (February 2003) order's requirement of relevancy was jettisoned, and plaintiffs' counsel was effectively deputized by the court to review the records and determine which were relevant. *See* 5/15/03 Tr. at 15–16 (directing that plaintiffs' counsel be allowed "to review the entire file and to tab those records that he believes will serve his evidentiary purposes").

The scope of this intrusion into the appellant's privacy is breathtaking. The court directed that plaintiffs' counsel "be permitted to review all records referred to in District of Columbia Code section 7–1305.12." 5/15/03 Tr. at 16. As the appellant's guardian correctly complained, and as the portion of the statute set out in the margin makes manifest, that section covers records involving "every area of the severely mentally-retarded's lives." *Id.* at 6.[13] There may well be

---

[13] Section 7–1305.12 applies to the records of mentally retarded "customers," who are defined as persons "admitted to or committed to a facility . . . for habilitation or care," *id.* § 7–1301.03(8B). The section provides that "[c]omplete records for each customer shall be maintained," and directs that these records shall include:

(1) Identification data, including the customer's legal status;

(2) The customer's history, including but not limited to:
   (A) Family data, educational background and employment record;

documents within that universe that are highly relevant to the plaintiffs' case because they "afford evidence of notice to the District of Columbia that, as alleged in the complaint, [the appellant was] a sexual predator" who was a threat to the plaintiffs. 5/15/03 Tr. at 4 (explanation by plaintiffs' counsel of the relevance of the requested documents). And the

----

 (B) Prior medical history, both physical and mental, including prior institutionalization;

(3) The customer's grievances, if any;

(4) An inventory of the customer's life skills;

(5) A record of each physical examination . . . ;

(6) A copy of the individual habilitation plan; and any modifications thereto . . . ;

(7) The findings made in periodic reviews of the habilitation plan which findings shall include an analysis of the successes and failures of the habilitation program . . . ;

(8) A medication history and status;

(9) A summary of each significant contact by a professional person with a customer;

(10) A summary of the customer's response to his or her program, prepared and recorded at least monthly . . . ;

(11) A monthly summary of the extent and nature of the customer's work activities and the effect of such activity upon the customer's progress along the habilitation plan;

(12) A signed order by a professional person, as set forth in § 7–1305.10(b), for any physical restraints;

(13) A description of any extraordinary incident or accident in the facility involving the customer, . . . including any reports of investigations of customer's mistreatment;

(14) A summary of family visits and contacts;

(15) A summary of attendance and leaves from the facility; and

(16) A record of any seizures, illnesses, treatments thereof, and immunizations.

D.C. CODE § 7–1305.12.

probative value of such documents may well outweigh the appellant's privacy interests. But it would be surprising if there were not also documents that — although hugely invasive of the appellant's privacy — are of only marginal relevance. And it would also be surprising if there were not others that — while equally intrusive — have nothing at all to do with the plaintiffs' claims. By treating all of the MRDDA documents alike, and thereby failing to weigh the appellant's privacy interest in a record against the record's value to the plaintiffs, the district court abused the discretion conferred upon it by Rule 26. *See In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988) (holding that "[a]lthough a district court has considerable leeway in weighing the different factors, the failure to balance at all requires remand") (internal citation omitted); *LaSalle Extension Univ. v. FTC*, 627 F.2d 481, 484 (D.C. Cir. 1980) (holding that "the district court abuses [its] discretion when it fails to weigh" the relevant factors).

## IV

We conclude that the district court abused its discretion by requiring the District of Columbia to produce all of the appellant's "mental retardation records" to counsel for the plaintiffs, August 2003 Order at 1, without protecting any records that may be subject to the federal psychotherapist privilege, and without weighing the appellant's privacy interests against the plaintiffs' evidentiary need for the remaining records. We therefore vacate the court's order and remand the case for further proceedings.

On remand, the district court has a number of options. It may, for example, permit the appellant's guardian to conduct an initial screening and produce any documents she concludes are not privileged or confidential. As to any withheld documents, the court may require the guardian to produce the "privilege log" described in Rule 26(b)(5).[14] If the log is

---

[14] Rule 26(b)(5) provides:

When a party withholds information otherwise discoverable under these rules by claiming that it is privileged . . ., the

insufficient to enable the court to resolve the issue, it may review the withheld documents *in camera*.[15] And if the volume of withheld documents is too large for the court's own review, the court may delegate the task to a magistrate judge.[16] But whether the district court employs this procedure or one of its own devise, it may not compel production of the appellant's records without determining whether any are subject to a federal privilege, and without weighing the probative value of each of the non-privileged documents against the extent of the intrusion into the appellant's legitimate privacy interests.

*Vacated and remanded.*

---

> party . . . shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

FED. R. CIV. P. 26(b)(5).

[15] Or, the court may skip the preliminaries and proceed directly to *in camera* inspection. *See United States v. Zolin*, 491 U.S. 554, 568–69 (1989) (noting that the Supreme Court "has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for *in camera* inspection"); *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1344 (D.C. Cir. 1984) (noting that "[*i*]*n camera* inspection of allegedly privileged documents . . ., when appropriate, [is an] accepted procedure[ ] in this circuit").

[16] *See* 28 U.S.C. § 636; FED. R. CIV. P. 72; *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.40 (11th Cir. 1997).