T.C. Memo. 2020-138

UNITED STATES TAX COURT

DAVID SHAUN NEAL, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 28426-15W.                    Filed October 5, 2020.

    P was a consultant who worked for target ("T") and, at T's
request, assembled information to give to an IRS agent who
conducted an audit. P left T in 2012, and in 2014 he submitted to R's
Whistleblower Office ("WBO") a Form 211, "Application for Award
for Original Information", making allegations of tax issues
concerning T. The WBO determined that an audit of T's returns was
already underway and that the same issue that P raised in his
Form 211 in 2014 had been raised in another individual's Form 211
that had been previously submitted in 2010 and had been forwarded
to the agent. The WBO did not forward P's Form 211 to the agent
and denied P's claim for an award on the grounds that "the
information you provided did not result in the collection of any
proceeds". R made adjustments to T's liability and collected tax. P
filed a petition in the Tax Court seeking review of the WBO's denial
of an award.

_____

    [*]This opinion replaces Neal v. Commissioner, T.C. Memo. 2020-135, which
was withdrawn by order dated September 29, 2020.

**[*2]**    R moved for summary judgment under Rule 121 on the basis of the administrative record as certified by R. P challenged the sufficiency of that record, alleging that the record omitted some information he had provided to the agent in 2012 and alleging that the record failed to show that his Form 211 submitted in 2014 had (as he contended) been forwarded to the agent. The Court held an evidentiary hearing to resolve P's challenge to the sufficiency of the administrative record.

Held: At the evidentiary hearing, P did not make a substantial showing with clear evidence that his Form 211 had been provided to the agent or that any information he provided had been omitted from the administrative record.

Held, further, the WBO did not abuse its discretion when it determined that P's Form 211 should not be forwarded to the examining agent, that "the information you provided did not result in the collection of any proceeds", and that "[t]herefore, you are not eligible for an award" and denied P's claim.

David Shaun Neal, for himself.

Gregory H. Becker, Kevin G. Gillin, and Ryan Z. Sarazin, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GUSTAFSON, Judge:  Petitioner David Shaun Neal has appealed, pursuant to section 7623(b)(4),[1] the determination of the Whistleblower Office ("WBO") of

---

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

**[\*3]** the Internal Revenue Service ("IRS") that denies him a whistleblower award. The Commissioner of the IRS has moved for summary judgment under Rule 121, asserting that the administrative record demonstrates that the WBO did not abuse its discretion when it denied Mr. Neal's claims because the IRS did not use his information. Mr. Neal challenges the sufficiency of the administrative record, contending that information he provided was used by the IRS. For the reasons stated below, we will overrule that challenge and will grant summary judgment for the Commissioner.

FINDINGS OF FACT

In general, the following facts are stipulated or undisputed by the parties or are derived from the administrative record of Mr. Neal's award claim, as certified in this case by the Commissioner. As is noted below, however, some of the facts are derived not from that administrative record but from Mr. Neal's contentions and testimony given in this case.

_____

[1](...continued)
Revenue Code of 1986 as in effect at all relevant times (codified in 26 U.S.C.), and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*4]** <u>Mr. Neal, the target, the audit, and the previous award claim</u>

From 2004 to June or July 2012, Mr. Neal worked as a consultant for a taxpayer corporation, to which we refer as "the target". The target's returns were the subject of an IRS audit, conducted by Examining Agent Daniel Bermudez, that was ongoing from May 2010 until August 2015. Sometime in 2010 someone other than Mr. Neal submitted to the IRS an award claim on Form 211, "Application for Award for Original Information", making allegations of tax issues concerning the target.

<u>Production of information during the audit</u>

During the examination Agent Bermudez gave requests for documents and information to the target's officers in 2010 and 2011, and Mr. Neal retrieved responsive information, which the target then gave to the IRS.[2]

<u>The first NOPA</u>

In July 2012 the IRS issued to the target a Form 5701, "Notice of Proposed Adjustment" ("NOPA"), and Form 886-A, "Explanation of Items", dated July 9, 2012, which indicate that for the years 2008, 2009, and 2010 the IRS had

---

[2]Entries in a "Claim Action Listing" in the administrative record indicate that Mr. Neal submitted additional information; but the information is not before us, neither party has mentioned it, and we conclude it was immaterial to the outcome.

**[*5]** identified the write-downs on the target's portfolios of consumer distressed debt as an examination issue. The Form 886-A states the issue as: "Is the taxpayer allowed a deduction for partially worthless debts for the years ended 9/30/08, 9/30/09 and 9/30/10?"

By Mr. Neal's reckoning, the first NOPA "was completely wrong; it didn't reflect anything about the target company's business." The IRS made no tax collection from the target as a result of the first NOPA. Agent Bermudez recommended that the previous Form 211 claim (by a whistleblower other than Mr. Neal) be denied, and that previous claim was denied.

Mr. Neal's Form 211

After the first NOPA was issued and Mr. Neal stopped working for the target, he filed a Form 211 that the WBO received on May 6, 2014. The Form 211 identified one taxpayer, the target. The Form 211 alleged that in 2008 and 2009 the target had been engaged in the business of purchasing, managing for its own account, and servicing distressed consumer receivables, and alleged that "[i]n 2008 and 2009, * * * [the target] took several writedowns on its [debt] portfolios, primarily related to its purchase of * * * [a particular] portfolio."

Line 5 of the Form 211 asks for the "[n]ame and title and contact information of IRS employee to whom violation was first reported, if known."

[*6] Mr. Neal left line 5 blank. Line 6 asks for the "[d]ate violation reported (in number 6), if applicable"; and Mr. Neal also left line 6 blank. Line 7 asks, "Did you submit this information to other Federal or State agencies"; and Mr. Neal checked the box indicating "No". Line 8 asks, "If yes in number 7, list the Agency Name and date submitted"; and he left line 8 blank. On line 9 he checked the box indicating that his claim was a "New submission" rather than a "Supplemental submission".

WBO consideration

After the WBO reviewed Mr. Neal's Form 211, it mailed an acknowledgment letter to him on June 26, 2014. The WBO's Initial Claim Evaluation ("ICE") unit referred Mr. Neal's claim to Teresa Homola, a senior tax analyst in the WBO's Case Development and Oversight unit. Ms. Homola reviewed the claim and recommended that it be denied because a "previous claim with the same allegations was denied due to the fact that the examination team had already identified the issue." Ms. Homola returned the case file to the WBO's ICE unit. There a tax examining technician prepared an award recommendation memorandum based on Ms. Homola's conclusion and explained: "Classification denied the claim because already identified issue. The IRS took no action on the information provided by the whistleblower."

[*7]   The certified administrative record thus shows that the WBO did not forward Mr. Neal's claim information to the examination team auditing the target. (As we discuss below, Mr. Neal contends otherwise and asserts that the administrative record is deficient.)

On March 18, 2015, the WBO sent Mr. Neal a letter denying his claim for an award, which stated that "the information you provided did not result in the collection of any proceeds.  Therefore, you are not eligible for an award."  The March 2015 letter stated that it "does not contain a determination regarding an award under section 7623(b)".

The second NOPA

In August 2015 the IRS issued to the target another Form 5701 and Form 886-A which indicate that, for years beginning 2007 and ending 2013, the IRS had identified, as an examination issue:  "What is the correct method of recognizing income on collections from distressed consumer receivables and other portfolios held by the taxpayer?"  As the IRS described the situation (in correspondence with Mr. Neal during discovery in this case), the second NOPA "sets forth the adjustments and the basis on which the Service and * * * [the target] agreed to resolve the tax examination".  The amount of agreed tax liability exceeded $13 million.  The second NOPA reflected adjustments not only to the particular

[*8] portfolio that Mr. Neal mentioned in his Form 211 but also to others of the target's portfolios.

WBO determination and Mr. Neal's petition

On October 20, 2015, the WBO issued Mr. Neal another letter (consistent with its previous letter of March 18, 2015), which stated: "We considered the additional information you provided and determined your claim still does not meet our criteria for an award. Our determination remains the same"--i.e., as stated in the previous letter, "the information you provided did not result in the collection of any proceeds. Therefore, you are not eligible for an award." Mr. Neal filed his Tax Court petition on November 12, 2015.

Summary judgment filings

The Commissioner moved for summary judgment on July 26, 2017, contending that "there is no genuine issue of material fact, and the administrative record established that respondent did not abuse his discretion in denying petitioner's whistleblower claim for award." The Commissioner relied in part on the declaration of Agent Bermudez, which stated:

> 3. At no point during my examination did I receive the Form 211 or any other information submitted by David Shaun Neal.

[*9]          4.          I did not use any information Mr. Neal may have provided to the IRS to assist of my examination of * * * [the target] in any way.

Mr. Neal opposed the motion, calling this an "outright lie" and contending:

> These are known false statements. I personally met with Mr. Bermudez, in the back conference room at * * * [address] on at least four occasions during the * * * audit. I provided reams of documents in response to the inquiries of Mr. Bermudez. In fact, nearly all of the information upon which the * * * audit was based was provided by me.

Mr. Neal also contended that there was circumstantial evidence that the second NOPA, which was issued after he submitted his Form 211, was explicitly based on his Form 211.

In view of this stark dispute about the correctness and sufficiency of the administrative record, and specific sworn allegations about omissions from it, we ordered an evidentiary hearing on Mr. Neal's challenge to the sufficiency of the administrative record.

Evidentiary hearing

At the evidentiary hearing, Mr. Neal testified that he had obtained for the target the documents that it provided to the WBO, and that the target was "feeding * * * [the agent] the information that he was asking for and not really telling him how the accounting at the company worked" (i.e., that those documents were not

**[\*10]** germane to the real tax issue that the IRS should have examined).  Mr. Neal

concluded:

> [T]he target did not disclose any of those details [about the
> accounting abuses] to the revenue agent, completely--essentially just
> what he was asking for they gave him.  And they didn't say, no, no,
> no; that's not how it worked.  They should have said, hey, you're
> looking at the wrong thing; you should be looking at these
> impairments.  But the problem was, the impairments were false, and
> so they didn't want him to see that stuff.

Mr. Neal explained that he tried to volunteer to the target's officers other

documents ("some of the impairment schedules") that he proposed should be given

to Mr. Bermudez, but they were not given.

Mr. Neal testified that there came a time when he tried to speak to Agent

Bermudez out of the hearing of the target's officers.  His allegations are not

present in (and are contradicted by) the administrative record; and as we explain

below in part II.B.1, we do not believe these allegations.  However, even by

Mr. Neal's own account, his speaking to Agent Bermudez had no effect:

> I suggested to the revenue agent that he was on the wrong track and
> that * * * instead of asking for 1099s, he should be asking for
> portfolio accounting.
>
> And it--over the course of those meetings, it became very clear
> to me that the revenue agent simply did not understand the target's
> business.  He didn't understand how portfolio account worked.  He
> didn't understand that the subject of the audit was not about debts
> cancelled under 1099-C; it had nothing to do with it.  These debts

**[*11]** were already charged off.  That was not the nature of the business; it was a portfolio-based business.

> So I gave that all to him; he kind of ignored me, basically.
> Didn't take any of my information; * * * [but] produced a Notice of
> Proposed Adjustment that said, hey, you didn't issue all these
> 1099-Cs, therefore, you can't write these bad debts down.  That's
> what his first Notice of Proposed Adjustment was.  And that was
> issued after I was terminated from the target company.

That is, Mr. Neal believed that the first NOPA (which had no effect) failed to present the real tax issue relevant to the target.

Mr. Neal testified, however, that the <u>second</u> NOPA--

> contained a very detailed finding of precisely the accounting principle
> that I had initially relayed to the revenue agent, and which I had filed
> in my Form 211, i.e., that the impairments taken on the portfolios
> were incorrect; that they should not have impaired those portfolios,
> and that the adjustment should be made to increase the amount of
> revenue and recover those.

The second NOPA named a particular debt portfolio that Mr. Neal had identified in his Form 211, which caused him to infer that his Form 211 must have been provided to the examining agent.

At the hearing Mr. Neal also offered into evidence a report[3] of the Treasury Inspector General for Tax Administration ("TIGTA"), which identified "potential

---

[3]The report is entitled "The Whistleblower Program Helps Identify Tax Noncompliance; However, Improvements Are Needed to Ensure That Claims Are Processed Appropriately and Expeditiously", TIGTA Report Ref. No. 2016-30-059 (Aug. 30, 2016).

**[\*12]** problems" observed in the WBO's operations, including "[c]laims being sent straight to the field [i.e., to examination personnel] without SME [Subject Matter Expert] contact." From this report Mr. Neal surmised that Agent Bermudez might have been able to access his Form 211 in the IRS's records and use its information.

However, Ms. Homola, the WBO senior tax analyst, testified credibly at the hearing that in fact she did not ever send Mr. Neal's Form 211 to the personnel examining the target (nor to other units in the IRS). Mr. Neal briefly cross-examined her but not on this point.

Similarly, Mr. Bermudez, the examining agent, testified credibly that he did not ever see Mr. Neal's Form 211, that he did not recall ever making any information requests of Mr. Neal, that he did not recall ever receiving any documents from Mr. Neal, and that he did not remember ever seeing Mr. Neal before the day of trial. Mr. Bermudez testified that of the more than 20 meetings he had with the target's officers, there was one telephone conference call for which his notes reflected that Mr. Neal was also a participant, but he did not recall whether Mr. Neal played any role in that conference. The subject of that call was not the target's write-down of its debt portfolios (the subject of Mr. Neal's claim).

[*13] Mr. Neal's cross-examination of Mr. Bermudez on the subject of his supposedly receiving information from Mr. Neal consisted entirely of the following:

> Q [by Mr. Neal:] Okay, I just want to direct your attention to paragraph 3 [of Mr. Bermudez's declaration submitted in support of the Commissioner's motion for summary judgment], which says, "At no point during my examination did I receive Form 211 or any other information submitted by David Shaun Neal." So in light of the fact that at least there was one admitted phone call, do you think that statement in paragraph 3 is still correct?
>
> A [by Mr. Bermudez:] Well, if you said something in the meeting, the answer would be yes. But if you were silent in that meeting, the answer would be no. And I don't recall whether you said anything.
>
> Q Fair enough. Fair enough.

Mr. Neal was given an opportunity to put on rebuttal evidence, but he did not do so.

We later ordered each party to state its position as to the effect, on the proper resolution of this case, of our holdings in Kasper v. Commissioner, 150 T.C. 8 (2018) (determining that in whistleblower cases our scope of review is the administrative record and our standard of review is abuse of discretion), and Whistleblower 769-16W v. Commissioner, 152 T.C. 172 (2019) (holding that this Court may remand a whistleblower case to the WBO).

[*14]                                                Discussion

I.      General legal principles

        A.      Whistleblower claims and the WBO's review

        In section 7623(b), entitled "Awards to Whistleblowers", Congress

provided an incentive for providing to the IRS information on taxpayers'

noncompliance with the tax laws, in return for which--if the IRS uses that

information to collect proceeds--the whistleblower may become entitled to a

percentage of the collected proceeds.  Section 7623(b)(1) provides:

> If the Secretary proceeds with any administrative or judicial action
> described in subsection (a) based on information brought to the
> Secretary's attention by an individual, such individual shall * * *
> receive as an award * * * [a percentage] of the collected proceeds
> * * * resulting from the action * * *.

By those terms, a whistleblower will receive an award only if (1) the IRS

"proceeds with * * * [an] action" on the basis of his information and (2) the IRS

collects proceeds as a result of that action.  The WBO will deny the claim if it

determines that "the IRS either did not proceed based on the information provided

by the whistleblower * * * or did not collect proceeds" as a result of proceeding

against the taxpayer on the basis of the whistleblower's information.  26 C.F.R.

sec. 301.7623-3(c)(8), Proced. & Admin. Regs.

**[\*15]** B.    Standard and scope of Tax Court review of whistleblower awards

Section 7623(b)(4) provides that a "determination regarding an award" may be "appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)." As we held in Kasper v. Commissioner, 150 T.C. at 21-23, in a whistleblower case our review is generally restricted to the administrative record, and we review the WBO's determinations not de novo but rather for abuse of discretion. An abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. Id. at 21-22; Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). As we explained in Cline v. Commissioner, T.C. Memo. 2020-35, at \*15 (fn. refs. omitted):

> It is not to the Tax Court but to the Secretary of the Treasury that Congress has given the authority to "make the inquiries, determinations, and assessments of all taxes", sec. 6201, and to "collect the taxes", sec. 6301. The Tax Court has no practical means for evaluating the IRS's audit priorities, its allocation of its audit resources, or its judgments about the likelihood of collecting particular liabilities. Congress has given to the Tax Court not plenary oversight over the IRS but rather circumscribed jurisdiction to review certain actions in certain circumstances. In the award context, Congress has given the Tax Court jurisdiction to review the determinations of the WBO. Consequently, "we do not review the IRS's decision whether to audit a target in response to a whistleblower's claim and \* \* \* we have no authority to require the IRS to explain a decision not to audit." Lacey v. Commissioner, 153 T.C. \* \* \* [146, 164 (2019)].

**[*16]** C.     Summary judgment

Generally speaking, under Rule 121(b) the Court may grant summary judgment when "there is no genuine dispute as to any material fact and * * * a decision may be rendered as a matter of law".  Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  The Commissioner's motion cites this rule and invokes this standard.

However, we have recently observed that--

> the summary judgment standard is not generally apt where we must confine ourselves to the administrative record to decide whether there has been an abuse of discretion. * * * [I]n a "record rule" whistleblower case there will not be a trial on the merits.  In such a case involving review of final agency action under the APA, summary judgment serves as a mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. * * *

Van Bemmelen v. Commissioner, 155 T.C. __, __ (slip op. at 25-26) (Aug. 27, 2020) (fn ref. omitted).  That distinction (denying the motion where the record shows a dispute of fact versus denying the motion where the record fails to support the conclusion) does not affect the outcome in this case since, as we explain below, the administrative record does not reflect any dispute of fact as to, nor any lack of support for, the WBO's determination.

**[*17]** II.    <u>The sufficiency of the administrative record</u>

Mr. Neal maintains that the administrative record is insufficient and contends that we must remedy that insufficiency before deciding the case. We now turn to that contention.

A.    <u>Supplementing the record</u>

As we explained in <u>Van Bemmelen v. Commissioner</u>, 155 T.C. at __ (slip op. at 16),

> An administrative record may be "supplemented" in one of two ways, "either by (1) including evidence that should have been properly a part of the administrative record but was excluded by the agency, or (2) adding extrajudicial evidence that was not initially before the agency but the party believes should nonetheless be included in the administrative record." <u>Animal Legal Def. Fund v. Vilsack</u>, 110 F. Supp. 3d 157, 160 (D.D.C. 2015) (quoting <u>WildEarth Guardians v. Salazar</u>, 670 F. Supp. 2d 1, 5 n.4 (D.D.C. 2009)). * * *

Mr. Neal calls for the first such form of "supplementation", i.e., adding to the record the information that he contends should have been in the record but was excluded by the agency (that is, the information he says he himself gave to Agent Bermudez and his Form 211 that he says must have been given to the agent by the WBO or someone else).

However, such supplementation is not made upon mere demand by a petitioner. Where an agency has certified the administrative record, its

**[\*18]** designation of that record is entitled to a presumption of administrative regularity. Oceana Inc. v. Ross, 920 F.3d 855, 865 (D.C. Cir. 2019). Under that rebuttable presumption, "an agency is presumed to have properly designated the administrative record" and that presumption arises "[a]bsent a substantial showing made with clear evidence to the contrary". Van Bemmelen v. Commissioner, 155 T.C. at __ (slip op. at 18).

As we now explain, we hold that Mr. Neal did not make such a showing sufficient to challenge the WBO's certification of the administrative record in this case.

B.     Mr. Neal's contentions

Mr. Neal contends that the administrative record erroneously omits (1) information that he himself submitted directly to Agent Bermudez during the audit before Mr. Neal left the target company in 2012 and (2) disclosure that the WBO shared with Agent Bermudez his Form 211 that he submitted to the WBO in 2014. Such allegations, if true, might render the administrative record incomplete, might warrant supplementation of the record, and might call for the case to be remanded to the WBO for further consideration.

In ruling on this challenge to the sufficiency of the administrative record, we obviously do not confine ourselves to the administrative record. Rather, in this

[*19] instance we exercised our discretion to hold a hearing at which both parties were allowed to offer evidence.

We consider each of Mr. Neal's contentions in turn.

    1.    <u>Information allegedly given by Mr. Neal to Agent Bermudez during the audit</u>

Mr. Neal alleges that, while he worked as a consultant at the target during the audit and retrieved information at the request of the target's officers for submission to Agent Bermudez, he also submitted information directly to Agent Bermudez.[4] He described multiple in-person meetings with Agent Bermudez, during which he says he explained the real tax abuse that the target was perpetrating, which Agent Bermudez had failed to realize or perceive. We do not believe this allegation for four reasons.

First, Agent Bermudez credibly denied this allegation. He had no recollection of any meeting with Mr. Neal and, assisted by contemporaneous notes, was able to say only that Mr. Neal participated in one telephone conference call that Agent Bermudez had with the target's officers. Agent Bermudez did not

---

[4]If Mr. Neal gave any information to Agent Bermudez during the audit, he would have submitted it before he filed his Form 211. For purposes of this opinion, we assume that such information could nonetheless support an award claim. See <u>Whistleblower 21276-13W v. Commissioner</u>, 144 T.C. 290, 304 (2015) ("a whistleblower may approach an operating division of the IRS before notifying the Whistleblower Office").

[*20] recall Mr. Neal's speaking in that call, and the subject of that call was not relevant to the tax abuse that Mr. Neal alleges. When the opportunity came to cross-examine Agent Bermudez on this important point, Mr. Neal's contention wilted, and the agent's account went unchallenged. We do not know whether Mr. Neal's allegations were a knowing fabrication or were a badly distorted memory, but we believe Agent Bermudez. He received no information from Mr. Neal.

Second, even if we were to credit Mr. Neal's account, what he actually testified is that Agent Bermudez never understood what Mr. Neal was trying to explain. "[H]e kind of ignored me, basically. Didn't take any of my information." This is evidence not of information received by the agent but rather of information ignored by him.

Third, in July 2012, soon after Mr. Neal left the target, Agent Bermudez produced the first NOPA, which, by Mr. Neal's own account, "was completely wrong; it didn't reflect anything about the target company's business"; and it did not yield any tax proceeds collected by the IRS. Therefore, any information that Mr. Neal gave to the agent before the first NOPA did not give rise to collected proceeds and would not support a whistleblower award.

**[\*21]** Fourth, when Mr. Neal submitted his Form 211 two years later in 2014, he did not indicate on Form 211 that he had made any previous report of the target's violation to any IRS employee, and he characterized his Form 211 as a "New submission" rather than a "Supplemental submission". If he had really provided information to Agent Bermudez in 2012, then he should have so indicated on his Form 211 in 2014.

We do not find that the administrative record was incomplete insofar as it omitted information that Mr. Neal supposedly provided to the agent before the first NOPA.

### 2. The alleged sharing of Form 211 with Agent Bermudez

Mr. Neal argued that after he submitted his Form 211 in 2014, the WBO must have shared it with Agent Bermudez--an inference for which he cites (1) irregularities in WBO document-handling described in the TIGTA report and (2) the second NOPA, which was issued after his Form 211 was submitted and was consistent with it. We decline to make this inference for two reasons.

First, the TIGTA report tells us nothing about the WBO's handling of Mr. Neal's claim in particular, and the second NOPA does not bear any striking resemblance to the Form 211. The supposed facts he cites do not yield the conclusion he asks us to draw.

**[*22]** Second, and more important, credible testimony from both the supposed sharer of the Form 211 (Ms. Homola) and the supposed recipient of it (Agent Bermudez) deny that it was ever shared. Mr. Neal hardly probed this point at all with either witness when he had the opportunity for cross-examination. Their testimony was convincing, and we are persuaded that the WBO did not provide Mr. Neal's Form 211 to the examining agent.

Consequently, in the absence of any demonstrated defect in the administrative record as certified by the Commissioner, we must decide this case on the basis of that record.

III.    Analysis based on the administrative record

The administrative record for Mr. Neal's claim, as certified by the Commissioner with declarations from personnel of the WBO, shows that the WBO never transmitted Mr. Neal's Form 211 to the examination personnel who were auditing the target's returns. The WBO declined to forward his claim to any IRS operating division because it perceived that the subject matter of his Form 211 was the same as a Form 211 that had previously been submitted to the examination personnel, so that (it concluded) Mr. Neal's Form 211 would be duplicative. In reviewing the WBO's action, we do not substitute our judgment for its judgment but rather, as we have noted, review only for abuse of discretion. We have no

[*23] authority to direct the Commissioner to commence an administrative or judicial action. See Cohen v. Commissioner, 139 T.C. 299, 302 (2012), aff'd, 550 F. App'x 10 (D.C. Cir. 2014).

The WBO's denial of an award was predicated on the fact that no administrative or judicial action occurred and no proceeds were collected as a result of information provided in the claim. Consequently, in the words of section 7623(b)(1), there were never any "collected proceeds * * * resulting from" an action based on Mr. Neal's information, because there was never any action "based on information brought to the Secretary's attention by" Mr. Neal. On the basis of the information in the administrative record, Mr. Neal could therefore never be entitled to an award under section 7623(b)(1).

It is undisputed in the administrative record certified by the Commissioner that, as the WBO stated in its determination to Mr. Neal, "the information you provided did not result in the collection of any proceeds". Accordingly, we must agree with the Commissioner that there is no genuine dispute as to the material fact that the examining agent never received Mr. Neal's information. More to the point under Van Bemmelen v. Commissioner, we must conclude on that record that the WBO did not abuse its discretion when it determined: that Mr. Neal's duplicative Form 211 should not be forwarded to the examining agent, that "the

**[\*24]** information you provided did not result in the collection of any proceeds", that "[t]herefore, you are not eligible for an award", and that Mr. Neal's claim should be denied.

## Conclusion

We do not sustain Mr. Neal's challenge to the sufficiency of the administrative record. On the basis of the administrative record as certified by the IRS, we hold that the WBO did not abuse its discretion when it denied Mr. Neal's claim of a whistleblower award.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.