# United States Tax Court

T.C. Memo. 2026-5

WHISTLEBLOWER 11099-13W,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 11099-13W.                    Filed January 13, 2026.

————

P applied for a whistleblower award, alleging a scheme under which T manipulated its inventory purchases to inflate artificially its cost of goods sold, which T determined using the last-in, first-out (LIFO) inventory accounting method. R investigated P's allegations but could not confirm them. T subsequently changed its inventory accounting method from LIFO to first-out (FIFO). P seeks a whistleblower award based on the additional tax he claims T reported and paid because of T's cessation of its allegedly manipulative inventory purchases and the change to its inventory accounting method.

A whistleblower is eligible for an award only if R "proceeds with any administrative or judicial action . . . based on information" supplied by the whistleblower and collects proceeds "as a result of the action." I.R.C. § 7623(b)(1). R has moved for summary judgment that he did not abuse his discretion in denying P's application for an award because the administrative record "evinces that [P's] information could not be substantiated; that the [IRS] was unable to detect the tax noncompliance alleged by [P]; and that it collected no proceeds from the investigation of [P's] claim." Moreover, R adds, even accepting as fact P's allegations that T abandoned manipulative inventory practices and then abandoned LIFO, those facts are

**Served 01/13/26**

[*2]    immaterial, because self-assessed amounts reported by taxpayers on original returns are not, for purposes of I.R.C. § 7623(b)(1), "proceeds collected."

The parties have filed additional motions addressed at a possible trial and at the administrative record for review.

*Held*: R collected no proceeds on account of T's allegedly abandoning manipulative inventory purchasing practices and voluntarily changing its inventory accounting method from LIFO to FIFO. We follow *Lewis v. Commissioner*, 154 T.C. 124, 134 (2020) ("[R]eported, paid tax is not collected proceeds . . . .").

*Held, further*, accordingly, R did not abuse his discretion in denying P's application for an award, and we will grant R's Motion for Summary Judgment.

*Held, further*, we will deny P's Motions addressed to the scope and supplementation of the record for review because, as we rely on *Lewis* in disposing of R's Motion for Summary Judgment, the additions to the record that P requests would not change our disposition of that Motion.

*Held, further*, because we will grant R's Motion for Summary Judgment, we will deny as moot the parties' various motions requesting the inclusion or exclusion of evidence at trial.

————————

*Henry S. Lovejoy*, *Usman Mohammad*, *Bryan C. Skarlatos*, and *Brian C. Wille*, for petitioner.

*Amanda L. Myers*, *Patricia P. Davis*, *William D. White*, *Rachel G. Borden*, and *Russell Scott Shieldes*, for respondent.

**[\*3]** MEMORANDUM OPINION

HALPERN, *Judge*: This is a case brought under section 7623(b)(4), appealing respondent's determination not to make a so-called whistleblower award to petitioner for information he provided that he alleges led to the collection of incremental tax and other amounts.[1] Respondent has filed a Motion for Summary Judgment that the Internal Revenue Service (IRS) Whistleblower Office (WBO) did not abuse its discretion in denying petitioner an award. In support of the Motion, respondent relies on the pleadings, the Declaration of one of his employees, Steven J. Mitzel (Declaration), and an Exhibit attached to the Declaration. Petitioner objects to our granting the Motion.

In addition to the Motion for Summary Judgment, we have pending six Motions: three by petitioner and three by respondent.

Petitioner's Motions are:

1. Motion to Determine Scope of the Administrative Record (Motion to Determine Scope).

2. Motion to Supplement the Administrative Record (Motion to Supplement).

3. Motion to Admit Deposition Testimony of Respondent's Current and Former Employees for Substantive Purpose at Trial (Motion to Admit).

Respondent's Motions are:

1. Motion in Limine to Exclude Leslie J. Schneider's Expert Report and Opinion Testimony.

2. Motion in Limine to Exclude Witness Testimony and Documents Outside the Scope of the Administrative Record.

3. Motion in Limine to Exclude Testimony of Former IRS Whistleblower Program Manager Robert Gardner.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., as amended, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), and Rule references are to the Tax Court Rules of Practice and Procedure.

**[*4]**    Each party objects to our granting any of his opponent's three listed Motions.

We will address the six additional Motions after addressing the Motion for Summary Judgment.  For the reasons explained below, we will grant the Motion for Summary Judgment and deny all six additional Motions.

*Background*

*Mr. Mitzel's Declaration*

The Declaration is an unsworn declaration made from personal knowledge under penalty of perjury.  Among the various facts that Mr. Mitzel declares to be true are the following.

Since December 2015, Mr. Mitzel has been the program manager for the WBO.  As program manager and in his former job as a management analyst for the WBO, he reviewed the information submitted as part of petitioner's whistleblower claim.  He also collected and reviewed documents from the WBO's administrative claim file and contacted IRS examination team personnel to obtain relevant information.  He then reviewed whether a judicial or administrative action occurred and whether any proceeds were collected on the basis of petitioner's information.  Ultimately, he recommended that petitioner's claim for award be denied.  All the information that he considered in making his recommendation is contained in the WBO's administrative claim file.  True and correct copies of the documents constituting the WBO's administrative claim file are attached to the Declaration.

*WBO's Administrative Claim File*

The following facts are supported by documents in the WBO's administrative claim file.  The file contains 906 numbered pages comprising a multitude of emails, reports, forms, and other documents.

*Application for a Whistleblower Award*

In July 2008, petitioner's counsel filed with the WBO an IRS Form 211, Application for Award for Original Information.  The application informed the IRS of a purported tax evasion scheme carried out by a target corporation and its affiliates (without distinction, Target).  The purported scheme, as described by petitioner, involved Target's purchases and sales of inventory that, on account of Target's

[*5] use of a last-in, first-out (LIFO) inventory accounting method, allowed it to artificially inflate its cost of goods sold for tax purposes (sometimes, LIFO Scheme). Petitioner claimed that Target used the LIFO Scheme to defer income tax indefinitely. He claimed that he was employed by one of the Target affiliated corporations that traded commodities that were integral to the LIFO Scheme.

*Initial Consideration by WBO and Assignment to the Field*

Upon receipt in the WBO, petitioner's application was assigned to an analyst, Robert G. Gardner, for evaluation. By mid-October 2008, Mr. Gardner had determined that the application met the requirements for processing as a claim under section 7623(b). He forwarded the application to one of the IRS's then-existing operating divisions, the Large and Mid-Size Business Division (LMSB), directing it to Cynthia Ogden, a senior program analyst and subject matter expert with respect to Target's line of business. He requested that LMSB proceed with an examination or investigation if appropriate. In late October 2008, petitioner's counsel provided the WBO with additional information pertinent to petitioner's application, including that Target was continuing the LIFO Scheme in 2008.

In March 2009, Ms. Ogden provided petitioner's information to Revenue Agent An Tran in LMSB Group 1604. Ms. Tran oversaw a team already examining Target's returns for its 2006 and 2007 tax years (06/07 audit cycle). The team began investigating petitioner's information but then suspended its investigation sometime in or after January 2010, deferring the investigation to another team examining Target's 2008 and 2009 tax returns (08/09 audit cycle). Ms. Tran wrote a report (Tran Report) that recited the team's actions before the team suspended its examination. Ms. Tran reported contacts and attempted contacts with ex-employees of Target. One ex-employee told the team that his severance agreement with Target required him to notify Target before discussing any Target-related matter. Ms. Tran also reported that Target had become aware of the IRS's attempts to contact Target's ex-employees, which caused Target to tell the team that such contacts were in contradiction to the audit procedures agreed to by the IRS and that Target required the examination team first to obtain information from current employees of Target.

In February 2010, petitioner's counsel again wrote the WBO, to provide it with additional information relevant to petitioner's application. Among other things, counsel informed the WBO that,

**[*6]** although petitioner was no longer employed by a Target affiliate, he had become aware that Target had terminated the LIFO Scheme. He believed that the termination was a direct result of the information that he had shared with the IRS. He further believed that, because of Target's termination of the LIFO Scheme in 2009, Target would realize additional taxable income in excess of $1 billion for 2009 and have an increased tax bill of up to $400 million for that year.

The examination team investigating Target for the 08/09 audit cycle took up petitioner's claim. In August 2012, the team concluded that it could not substantiate petitioner's claim about the LIFO Scheme. The senior revenue agent on the team prepared an analysis (Revenue Agent Analysis), which, in substantial part, is as follows:

REVENUE AGENT ANALYSIS

ISSUE:

Whether the taxpayer's inventory program properly complied with IRC 471.

FACTS:

The whistleblower clearly identified an esoteric tax issue revolving around the taxpayer's LIFO Inventory Program which he claims is in clear violation of IRC 471. The issue reflects trades done during the yearend period were "coupled," that is, a buy before year end matched with a sale after year end at same or a related price . . . . [M]y observations regarding the Whistleblower's testimony to the IRS officials are described below:

- The Whistleblower specifically addressed the fact that his job description was to provide the trading floor with legal expertise mainly from an ethics standpoint because of the taxpayer's previous trading irregularities which resulted in a major fine with the Federal Government. Furthermore, it appears in his interview with IRS officials he lacked the education, knowledge and applicable expertise necessary to properly understand corporate accounting and federal tax issues mainly in regard to the appropriate reporting requirements from an IRS standpoint.

[*7]

- He did not provide us with a clear understanding of what a hypothetical "forward contract" would look like in the books & records of the taxpayer in order for us to discover the scheme as described in his claim.

- The testimony by the Whistleblower never mentioned how the collusion between the traders and the tax department was executed from a paperwork and/or accounting entry perspective. In addition, he did not provide us with neither [sic] an example of the paperwork flowchart required by the tax department from the traders nor a specific third-party name or outside corporate parties mainly responsible for the execution of these alleged "coupled" trades at year end.

- The Financial Product expert on our audit team felt that the Whistleblower did not properly disclose the true nature of the internal mechanism the traders devised to accomplish this specific scheme especially the alleged collusion between parties which, of course, would be in violation of IRC 471.

As such, our examination techniques were hampered based on the limited starting knowledge from the aforementioned testimony by the Whistleblower. In addition, we lacked the necessary accounting format, workpapers and lead files the taxpayer was utilizing in order to accomplish these specific trades in house and, more importantly, the names of the corporate outside third parties responsible for executing this particular scheme. Finally, we felt our hands were tied in properly developing IDR's [Information Document Requests] because of our lack of knowledge on how the taxpayer devised the system in order to avoid detection by their own internal auditors.

\* \* \* \* \* \* \*

**[\*8]**    <u>CONCLUSION</u>

It has been determined that our investigation techniques failed to discover any . . . [documentation of the LIFO Scheme] which, of course, is a clear violation of IRC 471. As such, the Whistleblower claim filed on 7/02/2008 should be disallowed based on the fact that the aforementioned trades were not discovered resulting in no adjustment being made to inventory and/or Cost Of Goods Sold during our 200812 & 200912 audit cycle.

*Application for Change in Accounting Method*

In March 2012, Target filed with the IRS Form 3115, Application for Change in Accounting Method, to change its inventory accounting method from LIFO to first-in, first-out (FIFO) effective for tax year 2011.[2]

*WBO Final Consideration and Award Determination*

Form 11369, Confidential Evaluation Report on Claim for Award, is a tool used by an IRS operating division to inform the WBO of the results of its investigation of a whistleblower's information. Internal Revenue Manual (IRM) 25.2.2.6(14) (June 18, 2010). It is used to assist the WBO director in making an award determination. *Id.*

On January 19, 2011, Katherine Onken in the WBO (who had succeeded Mr. Gardner, who had been promoted to WBO program manager), received from Joe Ann Booker, Ms. Ogden's successor in the IRS Large Business & International Division (LB&I), a Form 11369 that she had completed for the 06/07 audit cycle (06/07 Audit Cycle Form 11369). Ms. Onken reviewed information from the examination team reporting on every agreed and unagreed adjustment in the 06/07 audit cycle to confirm that no adjustments were proposed or assessed against Target related to petitioner's claims.

---

[2] Taxpayers using LIFO are required to annually report a "LIFO reserve," which is the difference between their reported ending inventory and what their ending inventory would have been had they used FIFO. When converting from LIFO to FIFO, a taxpayer must, under section 481(a), "recapture" (i.e., recognize as income) that entire amount. As a result of its change from LIFO to FIFO, Target estimated on its Form 3115 that it would be recognizing section 481(a) income in excess of $9 billion.

**[\*9]** On August 21, 2012, Ms. Onken received from Senior Revenue Agent William R. Stevenson, Jr., a Form 11369 that he had completed for the 08/09 audit cycle (08/09 Audit Cycle Form 11369).[3] Both Mr. Stevenson and his manager had signed the form on August 10, 2012. Appended to the form was the Revenue Agent Analysis. Mr. Stevenson informed Ms. Onken that Target continued to use LIFO for tax years 2008 and 2009 but had filed Form 3115 to change its inventory accounting method from LIFO to FIFO effective for tax year 2011.

In early 2013, responsibility for petitioner's whistleblower claim was passed to Mr. Mitzel (then a WBO senior analyst). On March 15, 2013, Mr. Mitzel reviewed the then-existing WBO administrative claim file, apparently containing the 06/07 Audit Cycle and 08/09 Audit Cycle Forms 11369, the Tran Report, the Revenue Agent Analysis, and supporting documents. He asked for, and reviewed, additional information, including a copy of the Form 3115 by which Target had applied to change from LIFO to FIFO accounting for inventory beginning in 2011. Mr. Mitzel was satisfied that the issues petitioner raised were not part of the audit adjustments made by the examination teams for the 06/07 and 08/09 audit cycles. He confirmed that, although Target's case was open in Appeals, none of the unagreed issues in Appeals related to the LIFO inventory or any other inventory computation.

On April 12, 2013, Mr. Mitzel checked a box on the 08/09 Audit Cycle Form 11369 recommending that no award be made to petitioner and emailed Mr. Gardner, then WBO program manager, his recommendation. He advised Mr. Gardner:

> Attached is a Form 11369 recommending 0 award for the informant. The allegations involved year end LIFO inventory manipulation. The examination team examined the issue but could not substantiate the allegations. The Taxpayer has subsequently elected to convert to the FIFO method of accounting.

---

[3] While box 4, Tax Years Involved, of Form 11369 reports "200712 & 200812" as the years involved, the attached Revenue Agent Analysis reports "no adjustment being made to inventory and/or Cost of Goods Sold during our 200812 & 200912 audit cycle." We assume the box 4 entry to be in error.

**[\*10]** Again, on April 12, 2013, a few minutes after emailing Mr. Gardner his recommendation, Mr. Mitzel sent him another email, stating the following:

> While assembling the claim file I read a 2/18/2010 letter from the WB [power of attorney]. The WB claims that the [taxpayer] ended its LIFO inventory practices in 2009. The WB wants the increased income reported on the 2009 return treated as collected proceeds. I cannot confirm that the alleged practices ended in 2009. The taxpayer did change from LIFO to FIFO for six subsidiaries for the 2011 tax year.

On April 15, 2013, Mr. Gardner emailed WBO Director Stephen A. Whitlock, stating that he concurred with Mr. Mitzel's recommendation that petitioner's claim be rejected. He added: "The team did examine the issue but was unable to substantiate the allegations on the inventory issue and the issue was no changed."

On April 16, 2013, after reviewing Messrs. Mitzel's and Gardner's recommendations and attached materials from the WBO's administrative claim file, Mr. Whitlock determined that petitioner was not entitled to an award.

The next day, April 17, 2013, Mr. Gardner, reflecting Mr. Whitlock's determination that petitioner was not entitled to an award, signed a letter to petitioner informing him that his application for an award had been denied (sometimes, Determination). In pertinent part, the letter states:

> We have considered your application for an award dated June 22, 2008. Under Internal Revenue Code Section 7623, an award may be paid only if the information provided results in the collection of additional tax, penalties, interest or other proceeds. In this case, the information you provided did not result in the collection of any proceeds. Therefore, you are not eligible for an award.

**[\*11]** *Petition*

The Petition, mailed May 17, 2013, was filed on May 20, 2013.[4] The Petition assigns error to the Determination. In brief, the Petition avers that, contrary to the Determination, petitioner provided material information previously unknown by respondent that resulted, or will result, in the collection of proceeds in excess of $2 million.

*Discussion*

I.     *Introduction*

A.     *Section 7623*

Section 7623 provides for both discretionary and mandatory awards to individuals (i.e., whistleblowers) who submit information about third parties that have underpaid their tax or otherwise violated the internal revenue laws. Section 7623(a) authorizes discretionary awards, which are not subject to Tax Court review. By contrast, section 7623(b) authorizes nondiscretionary awards, which may be subject to our review.

"If the Secretary proceeds with any administrative or judicial action described in subsection (a) based on information brought to [his] attention" by a whistleblower, section 7623(b)(1) provides that the whistleblower, subject to exceptions not relevant here, shall receive an award of 15% to 30% of the "proceeds collected as a result of the action (including any related actions) or from any settlement in response to such action."[5] Section 7623(b)(4) grants the Tax Court jurisdiction to

---

[4] The Petition was timely filed. *See* §§ 7623(b)(4) (providing 30 days to appeal determination to the Tax Court), 7502(a)(1) (treating timely mailing as timely filing).

[5] The Bipartisan Budget Act of 2018 (Budget Act), Pub. L. No. 115-123, § 41108(a), 132 Stat. 64, 158, amended some of the terminology in section 7623. Among other things, the Budget Act added subsection (c), which defines the term "proceeds," and made conforming amendments to paragraphs (1) and (2)(A) of subsection (b). The amendments apply to whistleblower claims "with respect to which a final determination for an award has not been made before" February 9, 2018, the date of enactment of the Budget Act. *Id.* subsec. (d), 132 Stat. at 158–59. In *Lewis v. Commissioner*, 154 T.C. 124, 133 (2020), we held that, "for purposes of the effective date of the [2018] amendments, 'a final determination for an award' does not occur until after the whistleblower award can no longer be further challenged in this Court or elsewhere." This case remains sub judice, so the amendments substituting the term "proceeds collected" for the term "collected proceeds" are pertinent. Nevertheless,

[*12] review any "determination regarding an award under paragraph (1)." *See also Whistleblower 14376-16W v. Commissioner*, T.C. Memo. 2024-22, at *26 (holding that, because the WBO referred the whistleblower's claim to another office of the IRS, which proceeded with administrative action, and the WBO subsequently issued a final award decision denying the whistleblower's claim, we had jurisdiction over the case), *supplementing* T.C. Memo. 2017-181.

B.     *Scope and Standard of Review*

In reviewing a determination by the WBO, we look to the Administrative Procedure Act (APA) for both the scope and standard of our review. *Kasper v. Commissioner*, 150 T.C. 8, 18, 22 (2018). The general rule under the APA is that we confine our review to the administrative record compiled by the agency. *See Van Bemmelen v. Commissioner*, 155 T.C. 64, 72 (2020); *Kasper*, 150 T.C. at 14–15, 20. In other words, the scope of our review is delineated by the so-called record rule, which is "the general rule of administrative law that a court can engage in judicial review of an agency action based only on consideration of the record amassed by the agency (the administrative record)." *Kasper*, 150 T.C. at 14 n.8 (quoting *Ewing v. Commissioner*, 122 T.C. 32, 58 (2004) (Halpern and Holmes, JJ., dissenting), *vacated*, 439 F.3d 1009 (9th Cir. 2006)). Moreover, "[a]bsent a substantial showing made with clear evidence to the contrary, an agency is presumed to have properly designated the administrative record." *Van Bemmelen*, 155 T.C. at 74; *see also Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) ("[T]he designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity." (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993))).

We review for abuse of discretion, which means we do not substitute our judgment for the WBO's but decide whether its determination was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Van Bemmelen*, 155 T.C. at 72 (quoting *Kasper*, 150 T.C. at 21). In conducting this analysis, we do not substitute our judgment for that of the agency but instead confine ourselves to ensuring that its determination was "within the bounds of reasoned decisionmaking." *Id.* (quoting *Dep't of Com. v. New York*, 139

---

because this case and some of the authority we rely on predate the Budget Act, and because we perceive no difference for purposes of this case between the terms "collected proceeds" and "proceeds collected," we do not adhere to the change in terminology and use the two terms without distinction.

**[*13]** S. Ct. 2551, 2569 (2019)).  With respect to factual matters, that includes accepting the agency's determinations so long as they are not clearly erroneous.  *See Kasper*, 150 T.C. at 23.[6]

II.   *Motion for Summary Judgment*

A.   *Summary Judgment Standard*

Either party may move for summary judgment upon all or any part of the legal issues in controversy.  Rule 121(a)(1).  Ordinarily, under Rule 121(a)(2), the Court must grant summary judgment when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  That standard is not apt, however, where, as here—in a whistleblower case—we must confine ourselves to the administrative record to decide whether there has been an abuse of discretion.  *See* Rule 121(j) ("In cases in which judicial review is based solely on the administrative record, [paragraph (a)(2) is] not applicable."); *Van Bemmelen*, 155 T.C. at 79.

B.   *Administrative Record*

Because we will deny petitioner's Motion to Determine Scope and his Motion to Supplement, we hold that the WBO's administrative claim file is the administrative record for review.  *See Van Bemmelen*, 155 T.C. at 74 (holding that, absent substantial evidence to the contrary, the agency is presumed to have properly designated the administrative record).

---

[6] Earlier in this case, petitioner moved for partial summary judgment that both the scope and standard of review are de novo.  We denied that Motion by Order, and petitioner then moved pursuant to section 7482(a)(2)(A) and Rule 193 that we amend the Order to add the enabling statement described in Rule 193(a) allowing for immediate appeal of the Order to the U.S. Court of Appeals for the District of Columbia Circuit (Motion to Amend Order).  Before we acted on the Motion to Amend Order, petitioner instigated an appeal of the Order to the D.C. Circuit.  During the pendency of that appeal, we denied the Motion to Amend Order "without prejudice for petitioner to remake it if he believes that circumstances warrant."  Subsequently, without addressing the merits of the appeal, the D.C. Circuit granted the appellee's Motion to Dismiss the Appeal.  *See In re: Sealed Case*, No. 22-1022 (D.C. Cir. June 29, 2022), our dkt. entry No. 578.  In responding to the Motion for Summary Judgment, petitioner argues that, if we deny the Motion, we should certify the Order for immediate appeal.  Because we will grant the Motion, we need not consider that argument.

[*14]  C.    *Summary of the Parties' Arguments*

      1.    *Respondent's Arguments*

Respondent moves for summary judgment as a matter of law on the grounds that the undisputed material facts establish that the WBO did not abuse its discretion in denying petitioner's application for an award under section 7623.  "The administrative record," respondent argues, "evinces that petitioner's information could not be substantiated; that the [IRS] was unable to detect the tax noncompliance alleged by petitioner; and that it collected no proceeds from the investigation of petitioner's claim."

      2.    *Petitioner's Arguments*

Petitioner identifies the principal issues raised by the Motion as "whether [Target's] act in abandoning [the LIFO] scheme in 2009, and in renouncing its use of LIFO in 2012, qualify as compensable acts under § 7623(b)(1)."  He answers in the affirmative:

> [S]o long as [Target's] actions caused it to pay more tax (which it indisputably did), and so long as [petitioner] can tie that change to action that the IRS took using information that he supplied to them (which he indisputably can), then the "additions to tax" that [Target] paid as a result constitute "collected proceeds" under the Whistleblower Statute.

D.    *Respondent's Answers to Petitioner's Arguments*

      1.    *Collected Proceeds Do Not Include Self-Assessed Amounts Reported in a Taxpayer's Original Returns.*

Respondent answers petitioner's claim that Target's acts of abandoning the LIFO Scheme in 2009 and in renouncing LIFO in 2012 qualify as compensable acts under section 7623(b)(1).  It is pure conjecture, respondent says, for petitioner to claim that Target was motivated to change its behavior and its tax reporting on account of the IRS's investigation of petitioner's information during the 06/07 audit cycle.  On the basis of that conjecture, respondent reads petitioner as arguing that "amounts reported in [Target's] subsequent original returns are 'collected proceeds' resulting from an administrative action under I.R.C. § 7623(b)."  Respondent answers that, even if petitioner's conjecture were correct, it would be "immaterial because . . . self-

**[\*15]** assessed amounts reported in a taxpayer's original return are not 'collected proceeds,'" and no award may be made to petitioner as a matter of law. Respondent gives three explanations why, as a matter of law, that is so.

> 2. *Under the Statute, Tax Noncompliance Must Be Detected Before Collected Proceeds Result from an IRS Action.*

The prerequisites to a mandatory award under section 7623(b), respondent says, are "*both* the initiation of an administrative or judicial action *and* collection of tax proceeds," *Cooper v. Commissioner*, 136 T.C. 597, 600 (2011), and "the IRS must actually detect tax noncompliance based on the whistleblower's information." "It is undisputed," he adds, "that the IRS was unable to detect the purported scheme alleged by petitioner." LB&I's investigation of petitioner's information, respondent says, was concluded by the 08/09 audit cycle examination team. In August 2012, the team concluded that it could not substantiate petitioner's claim about the LIFO Scheme. The senior revenue agent on that team prepared the Revenue Agent Analysis in which he concluded:

> It has been determined that our investigation techniques failed to discover any . . . [documentation of the LIFO Scheme] which, of course, is a clear violation of IRC 471. As such, the Whistleblower claim filed on 7/02/2006 should be disallowed based on the fact that the aforementioned trades were not discovered resulting in no adjustment being made to inventory and/or Cost Of Goods Sold during our 200812 & 200912 audit cycle.

The 08/09 audit cycle examination team was unable to identify any improper yearend purchases, respondent continues, "let alone conclude what the tax effect would be if [Target] ceased those hypothetical purchases." Moreover, even if the Court were to find fault with the examination team's investigation of petitioner's information, respondent says that the appropriate remedy would not be to make an award to petitioner but to "order a reexamination with no assurance that the IRS could suddenly detect years later what it was unable to prove even existed in a comprehensive examination." And that action, respondent adds, "would exceed the [Court's] jurisdiction conferred by § 7623(b)(4). E.g., Cooper III, 136 T.C. at 600."

[*16]    3.    *A Taxpayer's Voluntary Change in Reporting in Subsequent Tax Years is Not an Action Taken by the IRS.*

Respondent argues that "petitioner seeks amounts associated with a non-compulsory Form 3115, Application for Change in Method of Accounting, filed by [Target] in 2012." Filing that form and changing its inventory accounting method from LIFO to FIFO were "indisputabl[y] . . . voluntary taxpayer-initiated changes." And while the IRS may have collected more tax in 2011, the year of change, and in subsequent years, than it would have collected but for those voluntary acts, the additional collections do not constitute collected proceeds within the meaning of section 7623(b)(1). "Section 7623(b)(1)," respondent points out, "requires that any tax, penalties, interest, additions to tax, and/or additional amounts collected by the Secretary must result from an administrative or judicial action described in I.R.C. § 7623(a) before they can constitute 'collected proceeds.'" "An administrative action," respondent adds,

> must be an action taken by the IRS. See e.g., Treas. Reg. § 301.7623-2(a)(2) (an administrative action is "all or a portion of an Internal Revenue Proceeding").[7]

---

[7] When, in April 2013, Mr. Gardner signed the Determination, rules interpreting section 7623 were provided by Treasury Regulation § 301.7623-1(a) (2012). On August 12, 2014, the Secretary removed that regulation and promulgated Treasury Regulation §§ 301.7623-1 through -4 (2014 Regulations), applicable to whistleblower information submitted on or after that date and to claims for awards under section 7623(b) that "are open" as of that date. T.D. 9687, 2014-36 I.R.B. 486 (Aug. 12, 2014); *see* Treas. Reg. §§ 301.7623-1(f), -2(f), -3(f), and -4(e). In *Kasper*, 150 T.C. at 19 n.11, we found that, because the WBO had denied the whistleblower's application for an award no later than September 2011, the 2014 Regulations were inapplicable but, we added, "they can provide helpful insight." We discuss *supra* note 5 the effective date of amendments made by the Budget Act to the terminology of section 7623: "The amendments apply with respect to whistleblower claims 'with respect to which a final determination for an award has not been made before' February 9, 2018, the date of enactment of the Budget Act." We cite *Lewis*, 154 T.C. at 133, for its holding that "'a final determination for an award' does not occur until after the whistleblower award can no longer be further challenged in this Court or elsewhere." The reasoning behind our holding in *Lewis* could similarly lead to the conclusion that a whistleblower's award claim *remains open* until the WBO's determination on an award can no longer be further challenged. The 2014 Regulations would, thus, be applicable to petitioner's award claim. The parties have not addressed that possibility, although each has cited various provisions of the 2014 Regulations; respondent relies on *Kasper* to conclude that the 2014 Regulations "can be persuasive authority" or are "instructive." Petitioner goes further, citing the 2014 Regulations as "current (and now effective)." We see no need today to address a dispute with respect to the applicable

**[*17]** Accordingly, an original return filed by a taxpayer is not an "administrative or judicial action from which an award can be paid." <u>Whistleblower 16158-14W</u>, 148 T.C. [at 304] (holding that "[t]he mere fact that the taxpayer filed an original return in not a civil proceeding by the Commissioner)."

Respondent concludes:

> The IRS ceased investigating petitioner's allegations after the 08-09 cycle; the team that examined the Taxpayer in subsequent cycles did not possess or utilize petitioner's information; and the IRS has not examined the purported scheme in any subsequent cycles. Accordingly, it is indisputable that the IRS has taken no action based on petitioner's information since tax year 2009. This Court has repeatedly recognized that "Congress did not authorize the Court to direct the Secretary to proceed with an administrative or judicial action." <u>E.g., Cooper III</u>, 136 T.C. at 600. Because the IRS did not proceed with an action, no award can be paid from any amounts associated with the Taxpayer's voluntary change in reporting under section 7623(b).

> 4. Whistleblower 16158-14W *Supports Respondent's Position.*

Pointing to *Whistleblower 16158-14W v. Commissioner*, 148 T.C. 300, 308 (2017), respondent claims the Tax Court has already considered and rejected petitioner's interpretation of the term "collected proceeds," i.e., that the term encompasses self-assessed amounts reported in a taxpayer's original return. In *Whistleblower 16158-14W*, 148 T.C. at 308, we determined: "Collected proceeds do not include self-reported amounts collected when a taxpayer changes its reporting for years that are not part of the action." Respondent sets forth in some detail the facts and our analysis in that case, and we will do likewise.

In *Whistleblower 16158-14W*, the whistleblower, an employee of the taxpayer, informed the WBO that for 2006, 2007, and 2008, the taxpayer had failed to withhold tax on payments of interest and dividends that it had made to foreign persons. As is the case here, the

---

regulations since the parties have not. As we did in *Kasper*, we will treat the 2014 Regulations as providing helpful insight into the meaning of the statute.

**[\*18]** IRS expanded an ongoing examination to include the whistleblower's information but ultimately determined to make no adjustment for the examination years on the basis of the whistleblower's information. *Id.* at 302. Apparently learning that the taxpayer had come into compliance, the whistleblower supplemented his award application, arguing that his information had caused the taxpayer to correctly withhold tax and report its withholding obligations for tax years after the examination years. That, the whistleblower continued, caused the IRS to collect additional tax that should be considered "'collected proceeds' under section 7623(b)(1)." *Id.* at 301. The IRS did not examine any additional years because of the whistleblower's submissions, and in June 2014, the WBO notified the whistleblower that he was entitled to no award because the information that he had provided had not resulted in the collection of any proceeds. *Id.* at 302. He petitioned us for review.

The Commissioner moved for summary judgment arguing that he was entitled to such as a matter of law because the information provided by the whistleblower did not lead to the collection of any proceeds and, therefore, the whistleblower was not entitled to an award. The whistleblower responded that the information he had provided caused the taxpayer to change its withholding practices for years after the Commissioner's examination and, further, that change in its withholding practices led the Commissioner to collect additional tax that should be considered "collected proceeds" within the meaning of section 7623(b)(1).

We began our analysis by observing that, for an award under section 7623(b)(1), the Secretary must proceed with an administrative or judicial action. *Id.* at 304. There was no dispute, we continued, that the Commissioner had taken an administrative action with respect to the taxpayer's 2006 through 2008 tax years. The Commissioner had taken no action for years after 2008. "The mere fact that the taxpayer filed an original return," we added, "is not a civil proceeding by the Commissioner. Thus, there is no administrative or judicial action from which an award can be paid." *Id.* The whistleblower argued that the Commissioner collected proceeds because the taxpayer came into compliance and withheld tax for years after the examination years, "which can be attributed back to the years for which there was an action." *Id.* Rejecting the whistleblower's argument, we held: "Collected proceeds do not include self-reported amounts collected when a taxpayer changes its reporting for years that are not part of the action." *Id.* at 308. We granted the Commissioner's motion for summary judgment.

**[\*19]** Relying on *Whistleblower 16158-14W*, respondent concludes that "any amounts that were self-assessed by [Target] when it voluntarily changed from LIFO to FIFO in 2012 are not 'collected proceeds' under I.R.C. § 7623(b). This failure to satisfy a fundamental prerequisite for an award under I.R.C. § 7623(b) is fatal to petitioner's case."

After making that argument, in a supplemental round of briefing by the parties respondent adds that, in *Lewis*, 154 T.C. at 134, we broadened our holding in *Whistleblower 16158-14W* to hold that "reported, paid tax is not collected proceeds" even if "an ongoing audit was expanded to include the year of the reported, paid tax."

E.     *Petitioner's Arguments*

1.     *Statute Requires an Award*

As we have summarized, petitioner believes that we should deny the Motion because he is entitled to a share of the additional tax that Target reported and paid—and that it would not otherwise have reported and paid—but for respondent's acting on his claim. Because of that action, he continues, Target (1) terminated the LIFO Scheme it had theretofore been pursuing and (2) switched its inventory accounting method from LIFO to FIFO.[8]

Petitioner believes that his award claim falls squarely within the class of claims covered by the whistleblower statute. While petitioner concedes that "[t]he Whistleblower Statute embodies Congress's intent to detect and deter tax-related wrongdoing," he argues that the term "collected proceeds" is afforded a "broad and sweeping" meaning under the law, one which encompasses varied payments based upon the information that a whistleblower has provided. Congress did not, he argues, "condition recovery under § 7623(b)(1) on a finding that the tax laws have been violated." Nor, he adds, did it exclude from the meaning

---

[8] Petitioner answered the Motion for Summary Judgment with his Memorandum of Law in Opposition to Respondent's Motion for Summary Judgment. Subsequently, he filed his Supplemental Memorandum of Law in Opposition to Respondent's Motion for Summary Judgment. Petitioner explained that he was filing the Supplemental Memorandum to address pertinent decisions of the Tax Court subsequent to his Memorandum of Law—notably *Van Bemmelen*, 155 T.C. 64, *Whistleblower 769-16W v. Commissioner*, 152 T.C. 172 (2019) (addressing remand in whistleblower cases), *Berenblatt v. Commissioner*, 160 T.C. 534 (2023), and *Lewis*, 154 T.C. 124—and to align his arguments with the "framework" set forth in *Kasper*, 150 T.C. 8, "whose holdings [he] continue[s] to believe to be flawed." In setting forth his argument, we rely principally on petitioner's Supplemental Memorandum.

**[\*20]** of proceeds "tax payments that are ostensibly 'voluntary' in nature."

## 2. *Arbitrary, Capricious, and Abuse of Discretion*

Petitioner also claims that we should deny the Motion because the WBO acted in an arbitrary and capricious manner, and abused its discretion, when it denied his application for an award. The WBO, petitioner says, denied him an award "based on its reading of two Form 11369s—[the 06/07 Audit Cycle Form 11369 and the 08/09 Audit Cycle Form 11369]." Both forms, he continues, "are filled with glaring deficiencies—omitting key facts and failing to provide accurate information on a myriad of issues, including, most importantly, the very grounds on which [petitioner] was seeking an award." Those two forms and "a handful of other documents," petitioner claims,

> represent the entirety of the materials the [WBO] received from the IRS's field office. . . . This is significant, not only because it shows the paucity of information the [WBO] had before it when it rejected petitioner's claim, but because it demonstrates that the [WBO] rejected [petitioner's] claim without understanding the basis he had advanced for an award.

The 08/09 Audit Cycle Form 11369, for example, "says nothing about [Target's] change to FIFO in 2012, nor does it raise the possibility that the change was linked to the IRS's resumed investigation."

Summing up, petitioner argues:

> Whether viewed individually or collectively, [the WBO's] glaring oversights constitute "abuses of discretions [sic]" under prevailing law. See, e.g., Kasper, supra, 150 T.C. at 22-23 ([WBO] abuses discretion when its decision is based on "a clearly erroneous assessment of the facts"); Whistleblower 769-16W v. Commissioner, 152 T.C. 172, 178 (2019) (same); see also Honeywell Technology Solutions, Inc. v. Department of Air Force, 779 F.Supp.2d 14, 25 (D.D.C. 2011) (abuse of discretion where record evidenced that agency failed to address contractor's arguments against disclosure of information in FOIA matter); Whittaker v. Commissioner, T.C. Memo. 2023-59, 2023 WL 3451557, at \*8 (2023) (abuse of discretion where record evidenced that IRS failed to address taxpayer's

**[\*21]** arguments regarding their inability to obtain a loan against their home).

### 3. Whistleblower 16158-14W *and* Lewis

Petitioner would distinguish *Whistleblower 16158-14W*, 148 T.C. 300, and *Lewis*, 154 T.C 124, on the grounds that those two cases "merely recognize that a whistleblower is ineligible for awards predicated on a taxpayer's filing of correct and accurate original income tax returns for *future years* that are not under audit." "Unlike the claims in [those cases], which sought an award for changes in taxpayer behavior that post-dated the IRS investigation," petitioner alleges that his "claims involve changes that took place while the IRS's investigation was ongoing."

### 4. *Remand*

Finally, petitioner asks that, if we deny the Motion for Summary Judgment because, in some way, the administrative record is faulty, we forgo remanding the case to the WBO for further proceedings but, instead, certify the Order for immediate appeal to the D.C. Circuit.[9] Because we will grant the Motion for Summary Judgment, we have no need to consider petitioner's request.

### F. *Discussion*

### 1. *Introduction*

Mr. Whitlock determined that the IRS collected no proceeds for Target's 2006 through 2009 tax years on the basis of petitioner's information. Nevertheless, says petitioner, notwithstanding that the examination teams did not substantiate the LIFO Scheme, Target became aware that the IRS was investigating its inventory practices. That knowledge, he surmises, caused Target to abandon the scheme when it reported its income for 2009 and, voluntarily, to change its inventory accounting method from LIFO to FIFO in 2012. On the premise that Target would not have taken those actions but for the examinations prompted by his information, petitioner argues that he should share in the added tax Target paid for 2009 and in the recapture

---

[9] *See supra* note 6 (discussing (1) the Order, by which we denied petitioner's Motion for Partial Summary Adjudication That Appropriate Scope and Standard of Review Here Are "De Novo," and (2) petitioner's unsuccessful attempt to appeal that denial).

**[\*22]** of Target's LIFO reserve and other proceeds collected because of Target's voluntary accounting method change.[10] Relying on *Whistleblower 16158-14W*, 148 T.C. at 308, respondent answers concisely: "Even . . . accept[ing] all of petitioner's speculative allegations as fact they are ultimately immaterial because self-assessed amounts reported by taxpayers in future years are not 'proceeds collected by the Government.'"

### 2. Whistleblower 16158-14W *and* Lewis

Petitioner does not say that we erred in *Whistleblower 16158-14W* but argues that our holding there is inapplicable on the facts before us. He reads our holding in *Whistleblower 16158-14W* that collected proceeds do not include self-reported amounts as limited to a situation where the taxpayer changes its reporting only "after the IRS's investigation of the taxpayer had concluded." To the contrary, he claims that Target changed from LIFO to FIFO "*while* the IRS' investigation was ongoing, . . . when [Target] learned that its inventory purchasing practices were under scrutiny." (Emphasis added.) Apparently, petitioner views Target's change from LIFO to FIFO as having taken place *during* the 08/09 audit cycle examination. Petitioner may so conclude because Target submitted Form 3115 to apply for the accounting method change in March 2012, which preceded—in August of that year—the 08/09 audit cycle examination team's concluding its examination by submitting Form 11369 to the WBO.

Petitioner reads *Whistleblower 16158-14W* without understanding that, in *Lewis*, 154 T.C. 124, we extended our holding in *Whistleblower 16158-14W* to exclude from collected proceeds self-reported tax paid with respect to a year to which an ongoing audit was extended. In *Lewis*, the whistleblower (Mr. Lewis) claimed that the WBO abused its discretion in excluding from collected proceeds reported, paid tax when an ongoing audit was expanded to include the year of the reported, paid tax. Mr. Lewis, who had been employed as a financial manager at a closely held corporation, filled out an award application (Form 211) claiming, among other things, that his former employer was paying and deducting as wages substantial sums paid to the corporation's owners' son who no longer worked at the corporation (wage issue). *Id.* at 125–26. On the basis of the Form 211, the

---

[10] *See supra* note 2 and accompanying text (discussing recapture of the LIFO reserve). Moreover, if inventory costs were rising, FIFO accounting would, for that reason alone, accelerate income from sales.

**[*23]** Commissioner began an audit of the corporation's 2010 tax year. The Commissioner did not include the corporation's 2011 tax year in the audit because the corporation had not yet filed its 2011 return. On the basis of communications with the revenue agent conducting the audit, the corporation knew the Commissioner's position on the wage issue before it filed its 2011 return. When it filed that return, it did not deduct any wages paid to the son. *Id.* at 126–27. The Commissioner expanded his examination of the corporation to include 2011 and eventually entered into a closing agreement for 2010 and 2011. Under the closing agreement, the Commissioner and the corporation agreed that the 2010 wage deduction to the son was disallowed. Deductions for 2011 totaling $15,961 were disallowed. *Id.* at 127.

After the audit, a revenue agent on the audit team completed a Form 11369 for the corporation's 2010 and 2011 tax years and submitted it to the WBO. The revenue agent opined that the corporation's change in reporting for the wage issue provides "additional award consideration." *Id.* at 128. He wrote that the corporation would have continued to claim the wage deduction if not for the whistleblower's information and computed that the wage deduction would have reduced the corporation's 2011 tax by $180,460. The revenue agent did not on the Form 11369 compute an amount of collected proceeds. *Id.* The WBO eventually determined that Mr. Lewis was entitled to a section 7623(b) mandatory award based, in part, on $5,872 of corporate tax collected for 2011. In determining the corporate tax collected for 2011, the WBO did not include any of the $180,460 tax reduction that the revenue agent computed would have resulted had the corporation for 2011 claimed a deduction for wages paid to the son. *See id.* at 129.

Mr. Lewis disagreed with that decision and appealed the WBO's award determination. We articulated the question before us as whether the WBO abused its discretion in excluding from the collected proceeds used to determine Mr. Lewis's award the tax proceeds resulting from the corporation's decision not to deduct the son's wages for 2011. We recognized that, in *Whistleblower 16158-14W*, we had held that collected proceeds do not include proceeds from a target's change in reporting for a future tax year that was not under audit at the time of the whistleblower award determination. *See id.* at 133–34. Mr. Lewis apparently drew from the reference in our holding to future years not under audit at the time of the award determination that we meant to exclude from collected proceeds additional tax from future, *voluntary* changes in reporting. He sought to distinguish *Whistleblower 16158-14W* on the grounds that he was claiming an award for the corporation's

[*24] change in reporting that was *not* a voluntary act. It was involuntary because the Commissioner was auditing the corporation's 2010 return, and the corporation knew of the wage issue before it filed its 2011 return changing its reporting. That, together with the Commissioner's addition of the 2011 return to the audit assured the corporation's compliance. *Id.* at 133–34. Ergo, the corporation did not act voluntarily and, according to Mr. Lewis, *Whistleblower 16158-14W* was distinguishable.

> We answered:
>
> The whistleblower information likely contributed to the corporation's decision not to deduct the wages for 2011. However, the same can be said about the target's decision to change its reporting in *Whistleblower 16158-14W*. We held there that reported, paid tax is not collected proceeds and see no need to narrow that holding in this case on the basis that an ongoing audit was expanded to include the year of the reported, paid tax.

*Id.* at 134.[11]

### 3. *Facts Before Us*

Indeed, while respondent received in March 2012 Target's application to change its inventory accounting method from LIFO to FIFO—five months before the 08/09 audit cycle examination team reported the results of its examination—nothing in WBO's administrative claim file indicates that the examination team expanded its examination to include 2011 or any year for which Target may have reported under FIFO. And even if the facts were to the contrary, we would still be governed by our holding in *Lewis*, 154 T.C. at 134, that "reported, paid tax is not collected proceeds" even if "an ongoing audit was expanded to include the year of the reported, paid tax."

---

[11] The regulations, we continued, recognize that, if a whistleblower's information results in the collection of proceeds and also causes the taxpayer to change its reporting for future years, the reported, paid tax, although not collected proceeds, may constitute a positive factor in determining the award percentage applicable to the collected proceeds. *See Lewis*, 154 T.C. at 134 ("The change in reporting affects the award percentage, not the amount of collected proceeds."); Treas. Reg. § 301.7623-4(b)(1)(viii). Here, however, that does not matter because the IRS determined that it had collected no proceeds on the basis of petitioner's information for Target's 2006 through 2009 tax years, which were reviewed during the 06/07 and 08/09 audit cycles.

**[\*25]** G.    *Conclusion*

Mr. Whitlock did not err in determining that the information petitioner provided did not result in the collection of any proceeds; therefore, he did not abuse his discretion in concluding that petitioner was ineligible for an award.   Our disposition of the six additional Motions does not change that conclusion.

III.    *The Six Additional Motions*

A.    *Introduction*

We need spend but little time addressing the six additional Motions.   Because we will grant the Motion for Summary Judgment, there will be no trial in this case, and we will deny as moot the parties' various Motions requesting the inclusion or exclusion of evidence or testimony at trial, i.e., petitioner's Motion to Admit and respondent's Motions in Limine re: (1) Mr. Schneider, (2) Scope of Record, and (3) Mr. Gardner.

B.    *Motion to Determine Scope*

Petitioner explains that his Motion to Determine Scope is intended to obtain from the Court a ruling on what information constitutes the record that respondent must make available to the Court so that the Court may determine whether respondent unlawfully withheld an award from petitioner.   Petitioner prays for an order declaring "that the 'administrative record' . . . consists of the entirety of information before the IRS while investigating [his] claim."

Petitioner elaborates: Although the WBO "communicate[s] award decisions" to claimants, he (petitioner) does not recognize the WBO as the "adjudicator of [whistleblower] claims."  He describes the WBO as "a clearinghouse through which whistleblower claims are processed, evaluated and assigned to IRS field offices."   The WBO, he claims, "is entirely dependent on IRS field offices for information about whether (and how) particular whistleblower claims are investigated (as reflected in Form 11369s)."   Documents in a WBO "claims file," petitioner continues, while significant, "represent only a small portion of what is relevant in determining whether the preconditions for recovery under the statute have been met."   Precedent from the D.C. Circuit, he argues, requires that the administrative record in this case  include "any and all documents generated by the IRS's exam team . . . to which it had access to in preparing the Form 11369, which the [WBO] then used in making

**[\*26]** its award determination." "[T]he Court," he concludes, "should deem the 'administrative record' to include the entirety of information before the IRS while investigating [his] claim."

Petitioner is wrong that the WBO director is not the IRS official responsible for determining whether to make an award determination in response to a whistleblower's claim for an award. As respondent points out: "The director of the [WBO] is explicitly delegated the authority from the Commissioner to make award determinations under I.R.C. § 7623. *See* I.R.S. Deleg. Order 25-7 (Rev. 1), IRM 1.2.52.[2(3)] (July 1, 2008)." We have reached the same conclusion. *See Whistleblower 26876-15W v. Commissioner*, 147 T.C. 375, 378 (2016).

Moreover, in the context of a whistleblower-case discovery dispute, we recently considered whether the WBO was deemed to have indirectly considered all information coming before an IRS field office during its examination of a whistleblower's claim. In *Berenblatt*, 160 T.C. 534, after the WBO had denied Mr. Berenblatt an award, he then petitioned the Court for review of the denial, and the Commissioner presented us the administrative record for review. We rejected Mr. Berenblatt's argument that, insofar as the special agent had completed the Form 11369 on which the WBO relied, he was the decision maker for purposes of the record rule, and the administrative record must include all documents available to him when he completed that form. *Id.* at 551. And in response to Mr. Berenblatt's argument that "any relevant documents available to the WBO when it ruled on his claim are discoverable whether or not the WBO reviewed them," we answered that, "[i]f *any* potentially available document in the IRS's possession at the time the WBO made its decision were discoverable, that would render the record rule all but meaningless." *Id.* at 551–52.

Our opinion in *Berenblatt* may be sufficient authority to deny petitioner's Motion to Determine Scope, but there is a more fundamental reason to deny it. Petitioner apparently wants to broaden the record submitted by respondent to show that (1) Target pursued the LIFO Scheme before the IRS investigated it and (2) Target both terminated the LIFO Scheme and switched to FIFO inventory accounting as a result of the investigation, which was conducted on the basis of the information petitioner provided. And that being so, Target paid more tax. But suppose all of that were true? It would not matter. Petitioner still would not be entitled to an award. Again, he wants a share of tax reported and paid, and "reported, paid tax is not collected proceeds." *Lewis*, 154 T.C. at 134.

**[\*27]** C.   *Motion to Supplement*

Petitioner asks that he be allowed to supplement the administrative record with the following.

1) His affidavit responding to respondent's Motion for Summary Judgment.

2) Transcripts of depositions he took of eight current and former IRS employees who would testify if he called them as witnesses at a trial in this case.[12]

3) A document styled "Expert Report of Leslie J. Schneider," which petitioner would proffer as Mr. Schneider's expert witness report if this case were called for trial and Mr. Schneider was accepted as petitioner's expert witness."

4) Two stipulations of facts:[13] The First Stipulation of Facts and the First Supplemental Stipulation of Facts.

5) Reports from a U.S. Government agency and securities filings by Target and companies in like businesses.

6) All of the information before the IRS in investigating petitioner's claim that is not included in the WBO's administrative claim file.

Petitioner recognizes that supplementing the administrative record in a case governed by the record rule is the exception, not the rule. *See Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010). Nevertheless, apparently failing to

---

[12] Petitioner took those depositions at an earlier stage in this case when he thought that we might deny respondent's Motion for Summary Judgment because of a genuine dispute as to material facts, *see* Rule 121(a)(2), and that a trial would follow. In anticipation of that trial, petitioner made the Motion to Admit—to admit transcripts of the depositions he had taken and to excuse the deponents from testifying—in order to avoid repetition of the matters covered during the depositions and to avoid the burdens on the witnesses of traveling away from their homes to attend trial. In *Van Bemmelen*, 155 T.C. at 79, we held that, "in a 'record rule' whistleblower case there will not be a trial on the merits." In light of that holding, petitioner "asks that the administrative record be supplemented to include [the] transcripts."

[13] Petitioner asks "that the Stipulations previously agreed to by the parties . . . be added to the administrative record." The parties have filed four Stipulations. We assume petitioner was referring only to the two listed Stipulations of Fact and not also to two Stipulations regarding redacted documents.

**[\*28]** understand the consequence of our holding in *Lewis*, petitioner directs us to *Van Bemmelen*, 155 T.C. at 76, where we described a small class of cases recognized by the D.C. Circuit in which extrarecord evidence would be appropriate. Included in that small class is "background information [if] needed 'to determine whether the agency considered all the relevant factors.'" *Id*. (quoting *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010)). But given our holding in *Lewis*, 154 T.C. at 134, about the meaning of the term "collected proceeds"—"reported, paid tax is not collected proceeds"—how could any information *not* in the administrative record prevent the conclusion that the WBO did not abuse its discretion in denying petitioner an award? Petitioner has not persuaded us that any supplementation of the administrative record is called for or would change the conclusion that respondent collected no proceeds because of the information petitioner provided.

## IV.   *Conclusion*

Mr. Whitlock did not abuse his discretion in denying petitioner's application for a whistleblower award. We will grant respondent's Motion for Summary Judgment. We will deny the parties' six additional Motions.

To reflect the foregoing,

*An appropriate order and decision will be entered.*